JUDITH SPIEGELMAN, Plaintiff-Appellee, v. VICTORY MEMORIAL HOSPITAL, Defendant-Appellant (Murray Keene *et al.*, Defendants).

First District (5th Division) No. 1—07—3195

Opinion filed June 5, 2009.—Rehearing denied July 13, 2009.

---

Ruth V. Enright, of Baker & Enright, and Hugh C. Griffin and Stevie A. Starnes, both of Hall Prangle & Schoonveld, LLC, both of Chicago, for appellant.

Thomas O. Plouff and James P. Costello, both of Costello, McMahon, Burke & Murphy, Ltd., and Michael W. Rathsack, both of Chicago, for appellee.

JUSTICE TOOMIN delivered the opinion of the court:

This appeal arises from a malpractice action by plaintiff, Judith Spiegelman, to recover for injuries she sustained as a result of misdiagnosis of bacterial meningitis. Defendant Victory Memorial Hospital was found liable based on defendant Dr. Murray Keene's apparent agency. Victory Memorial appeals, seeking reversal of the trial court's denial of its motion for judgment notwithstanding the verdict, arguing that plaintiff failed to prove: (1) that Victory Memorial held out Dr. Keene as its agent; and (2) that plaintiff justifiably relied on any purported holding out by Victory Memorial. Alternatively, Victory Memorial argues the trial court erred in denying its motion for a new trial for the following reasons: (1) the manifest weight of the evidence failed to establish any holding out or reasonable reliance by plaintiff; (2) the court erred in admitting evidence of Victory Memorial advertisements; and (3) the court erred in denying defendants' motion to transfer the cause based on the doctrine of *forum non conveniens*. For the following reasons, we affirm.

## BACKGROUND

The afternoon of November 29, 1998, plaintiff Judith Spiegelman went to the emergency room of Victory Memorial Hospital in Waukegan, Illinois, because she was feeling ill. Plaintiff was 56 years old at the time and was accompanied by her adult son, Joshua Spiegelman. At about 3 p.m. and again at 3:45 p.m., plaintiff spoke with the emergency room triage nurses and complained of a headache, pain in her left ear, congestion, dizziness when she turned her head, occasional double vision, and nausea with no vomiting. Plaintiff informed the nurses that she was taking the antibiotic erythromycin and the anti-inflammatory drug Aleve. Plaintiff also gave her past medical history, which included smoking 2 1/2 packs of cigarettes per day, hypothyroidism, a history of sinusitis, and an allergy to penicillin. Plaintiff was alert and oriented and did not appear to be in acute distress. Although plaintiff's vital signs were all normal, she had a temperature of 100.1 degrees.

While plaintiff was waiting to see a doctor, she signed a one-page consent form titled "CONSENT FOR EMERGENCY TREATMENT." Paragraph 1 provided for consent to voluntary emergency treatment. Paragraph 2 concerned the administration of diagnostic and therapeutic treatments to be determined by the "Emergency Physician." Paragraph 3 provided:

"I am aware that during my visit to the Emergency Department of Victory Memorial, hospital employees will attend to my medical needs as may be necessary. I understand that these individuals may carry out a part or all of my treatment as consistent with their respective professional education, experience, and license."

Paragraph 4 provided:

"I understand that the Emergency Department physician and my attending physician are independent contractors and not agents or employees of VICTORY MEMORIAL HOSPITAL. I further understand that my attending physician may request treatment or diagnostic services (including radiology, anesthesiology, pathology) by other physicians. I am also aware that any other physicians who may be called to attend my care are independent contractors and not employees or agents of VICTORY MEMORIAL HOSPITAL."

Paragraph 5 disclaimed any guarantee regarding the result of any diagnosis, test, or treatment at the emergency room. Paragraph 6 concerned the fact that signatures on further specific consent forms relating to specific medical or surgical diagnostic and treatment procedures may be requested, and also contained a release of liability for the exercise of judgment as to priority of treatment in the emergency room. Paragraph 7 contained a consent for disposal of tissue or body parts. Paragraph 8 specified that there "may be additional charges for physician services including but not limited to radiologists, anesthesiologists, pathologists, and emergency room physicians."

Paragraph 9 of the consent form further provided:

"I have read the above and I certify that I fully understand its contents. I also, by signing this form, indicate my consent to receive the diagnostic and therapeutic care and treatment at VICTORY MEMORIAL HOSPITAL as provided herein and as deemed necessary by my physician or his designee. I also know that I may refuse any part of all diagnostic or therapeutic procedures."

Immediately beneath the numbered paragraphs was an unnumbered separate section titled: "RELEASE FOR RESPONSIBILITY FOR VALUABLES." The signature line was beneath this section, and plaintiff's signature there was witnessed.

At about 4:30 p.m., plaintiff was first examined by defendant Dr. Murray Keene. Dr. Keene was not an employee of Victory Memorial but rather was employed by Emergency Specialists of Illinois, P.C.

Emergency Specialists paid Keene's salary and set his hours. Keene's physician's coat did not bear the Victory Memorial logo. According to Keene, plaintiff did not have chills or a fever, and did not have a tender or stiff neck, which would have been a sign of bacterial meningitis. Plaintiff had a left frontal headache, but there were no signs of seizure activity and no abnormal eye movements. Plaintiff had no chest pain and her lungs were clear. Her throat was also normal, and she had normal bowel sounds. Plaintiff demonstrated normal strength, with no extremity weakness or numbness. However, Keene noted that plaintiff's left side of her face was sagging, there was pus draining out of her left ear, and she had difficulty closing her left eyelid. Keene diagnosed plaintiff with Bell's Palsy, sinusitis, otitis media (ear drum infection), and ordered X-rays of plaintiff's sinuses.

Between 6:15 p.m. and 6:30 p.m., while waiting for her X-rays, plaintiff became pale and dizzy and vomited. The X-rays showed that she had multiple sinus infections. At 7:50 p.m., Keene decided to discharge plaintiff with instructions to follow up with her personal physician the next day. However, before she left the hospital her condition changed and Keene returned to reassess her. Plaintiff was unable to walk straight and was falling and leaning to the left. Keene suspected that she might be having a stroke and immediately ordered blood work and a CT scan of plaintiff's head. Keene also spoke with plaintiff's long-time personal physician, Dr. Pedro Palu-Ay, about plaintiff's symptoms at approximately 8:30 p.m. and decided to admit plaintiff.

The CT scan showed that plaintiff had no brain abnormalities and had not suffered a hemorrhagic or bleeding stroke, but that she had mastoiditis, an infection of the mastoid bone in her head. Keene did not believe that the CT scan ruled out an infarction-type stroke, where a blockage causes lack of blood flow to the tissue. The hospital admission order written by Keene after his discussion with Dr. Palu-Ay stated that plaintiff was to receive antibiotics and neurological checks every two hours. Keene did not suspect that plaintiff might have bacterial meningitis. At 10:15 p.m. she was moved to the hospital's telemetry floor, an intermediate level of care.

At the 4 a.m. neurological check on November 30, plaintiff had a temperature of 102.4 degrees and was mumbling and talking incoherently. The hospital nurses notified Dr. Palu-Ay, and he arrived at 5 a.m. to examine plaintiff. Palu-Ay ordered a consultation with a neurologist. At around lunchtime, a neurologist, Dr. Reuben Weisz, saw plaintiff and noted that she showed mild meningeal signs, such as a stiff neck, bilateral Babinski, a pathological reflex indicating damage to the brain or spinal cord, and mild confusion. However, Weisz

thought plaintiff more likely had a brain stem abscess, as opposed to meningitis. Weisz ordered an MRI of plaintiff's brain and also telephoned an infectious disease specialist, Dr. Louise Riff, to consult regarding what antibiotics plaintiff should receive. Riff ordered the discontinuation of Biaxin and plaintiff started receiving clindamycin to treat her sinusitis, mastoiditis and ear infections. After receiving the MRI results indicating a possible small abscess formation and a stroke in the part of the brain responsible for coordination, Weisz performed a spinal tap on plaintiff at around 8:30 p.m. to rule out whether plaintiff had bacterial meningitis.

Riff examined plaintiff the next morning. Plaintiff was not responsive to anything other than pain stimuli. While Riff was still not certain at this time whether plaintiff had bacterial meningitis, she ordered that plaintiff receive Rocephin, an antibiotic that can be used to treat that infection. Later that day, the spinal tap results showed that plaintiff indeed had bacterial meningitis.

As a result of the bacterial meningitis infection, plaintiff sustained permanent brain injury, which has left her wheelchair-bound and in need of assistance for all her daily functions. Plaintiff also has memory problems, slurred speech, difficulty writing, and a left facial droop.

On November 27, 2000, plaintiff filed her original negligence action, which she voluntarily dismissed on January 19, 2005. She refiled her action on May 11, 2005, and thereafter filed a first amended complaint on June 10, 2005, against defendants Victory Memorial, Keene, Palu-Ay, Riff, and Emergency Specialists of Illinois, P.C., in Cook County, Illinois. Plaintiff was a resident of Cook County at the time she filed this lawsuit. Plaintiff lived in a nursing home in Chicago before she moved to a nursing facility in Los Angeles, California, in May 2001.

On August 15, 2005, Riff moved to transfer the cause from Cook County to Lake County based on intrastate *forum non conveniens*. Victory Memorial joined in the motion. The trial court denied the motion, and we denied Victory Memorial's petition for leave to appeal pursuant to Supreme Court Rule 306(a)(2) (210 Ill. 2d R. 306(a)(2)). On August 10, 2006, plaintiff filed a second amended complaint, alleging both institutional negligence by Victory Memorial and vicarious liability based on the negligence of its apparent agents, Keene, Palu-Ay, and Riff. Plaintiff alleged that Keene was negligent in failing to consider bacterial meningitis when he treated her at the emergency room and by failing to order that plaintiff receive the antibiotic Rocephin. On June 13, 2007, when trial commenced, defendants renewed their motion to transfer venue, which the trial court treated as a motion to reconsider and denied.

Both sides presented expert testimony. Plaintiff's standard of care expert, Dr. Stanley Zydlo, Jr., testified that in his opinion Keene violated the standard of care by failing to consider that plaintiff had a central nervous system infection, and he should have immediately started her on the antibiotic Rocephin prophylactically, rather than administering Cipro. Plaintiff's causation expert, Dr. Roger MacArthur, testified that had Keene administered Rocephin, plaintiff would not have suffered neurological damage to the extent that she did.

Defendants' experts, Dr. John Flaherty and Dr. Mark Cichon, testified that Keene complied with the standard of care in all respects, as plaintiff did not exhibit the clinical signs of bacterial meningitis at any time in the emergency room and thus there was no reason for Keene to order a spinal tap or prescribe Rocephin. Dr. Fred Zar also testified on behalf of defendants regarding the lack of causation. He opined that even had Keene prescribed Rocephin, it would not have been any more effective against her bacterial meningitis than Cipro.

Both plaintiff's experts, Dr. John Caronna and Dr. Zydlo, and defendants' experts, Dr. Zar and Dr. John Segretti, believed that plaintiff had bacterial meningitis when admitted to the emergency room, but none of the experts believed that there were any changes in plaintiff's mental state at that time, as she was alert. Caronna testified that plaintiff had only focal meningitis upon admission, rather than diffuse meningitis, which is the type of meningitis that interferes with the metabolism of the brain. Zydlo believed plaintiff had some cerebral edema (brain swelling) while in the emergency room, but it was a clinically insignificant amount and did not affect her mental state at the time.

At the close of plaintiff's case, Victory Memorial orally moved for a directed verdict on the institutional negligence claim, which the court granted, without objection from plaintiff. Victory Memorial also orally moved for a directed verdict on the apparent agency claim, which the trial court denied. Victory Memorial renewed its motion the next day. The trial court granted the motion for directed verdict as to Victory Memorial's liability based on the apparent agency of Riff, given that the court had already entered a directed verdict in favor of Riff. However, the court took the motion under advisement as to the claim based on the apparent agency of Keene. At the close of all the evidence at trial, Victory Memorial again renewed its motion regarding the claim based on the apparent agency of Keene, but the court again took the motion under advisement.

The jury returned a verdict of $11,110,000 in favor of plaintiff and against defendants Victory Memorial, Keene, and Emergency Specialists of Illinois, P.C. The verdict was reduced to $10,610,000 to reflect

the pretrial settlement reached between plaintiff and defendant Palu-Ay. On October 25, 2007, the trial court granted Victory Memorial's request for a $2.4 million remittitur, to which plaintiff consented in order to obviate a new trial, but denied Victory Memorial's posttrial motion for judgment notwithstanding the verdict or new trial. The court also denied the posttrial motion of Keene and Emergency Specialists of Illinois. In turn, the court entered an amended judgment *nunc pro tunc* June 28, 2007, in the amount of $8,210,000. Keene did not appeal, and has paid plaintiff $2 million plus interest on the judgment. Victory Memorial appealed, and plaintiff cross-appealed.

## ANALYSIS

### I. Judgment Notwithstanding the Verdict

Victory Memorial Hospital first contends that the trial court erred in denying its motion for judgment notwithstanding the verdict asserting plaintiff failed to prove: (1) that Victory Memorial held out Keene as its agent; and (2) that plaintiff justifiably relied on any purported holding out by Victory Memorial. It is well settled that judgment notwithstanding the verdict should be granted only when "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors [a] movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513 (1967). Because the standard for entry of judgment notwithstanding the verdict " 'is a high one' [citation], judgment *n.o.v.* is inappropriate if 'reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented.' [Citation.]" *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 178, 854 N.E.2d 635, 652 (2006). A court of review "should not usurp the function of the jury and substitute its judgment on questions of fact fairly submitted, tried, and determined from the evidence which did not greatly preponderate either way. [Citations.]" *Maple v. Gustafson*, 151 Ill. 2d 445, 452-53, 603 N.E.2d 508, 512 (1992). We apply a *de novo* standard to our review of decisions on a motion for judgment notwithstanding the verdict. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 132, 720 N.E.2d 242, 257 (1999).

■ In 1993, our supreme court recognized that a hospital can be held vicariously liable based upon a principal-agency relationship between the hospital and the physician. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 523, 622 N.E.2d 788, 794-95 (1993). *Gilbert* held that a hospital's liability may be found under the doctrine of apparent authority for the negligent acts of a physician providing care at a hospital, "regardless of whether the physician is an independent

contractor, unless the patient knows, or should have known, that the physician is an independent contractor." *Gilbert*, 156 Ill. 2d at 524, 622 N.E.2d at 795. As set forth in *Gilbert*:

" 'For a hospital to be liable under the doctrine of apparent authority, a plaintiff must show that: (1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence.' " *Gilbert*, 156 Ill. 2d at 525, 622 N.E.2d at 795, quoting *Pamperin v. Trinity Memorial Hospital*, 144 Wis. 2d 188, 207-08, 423 N.W.2d 848, 855-56 (1988).

## A. Holding Out

■ Attaching significant reliance on its consent form, Victory Memorial asserts that plaintiff did not prove the first element of "holding out" to establish its vicarious liability for the negligence of Dr. Keene. In response, plaintiff maintains that the consent, in and of itself, does not defeat the "holding out" element, citing to *Schroeder v. Northwest Community Hospital*, 371 Ill. App. 3d 584, 862 N.E.2d 1011 (2006). In *Schroeder*, the universal consent form was not identical to Victory Memorial's; however, there are obvious similarities. The *Schroeder* consent was a one-page document consisting of six sections: (1) a general consent for treatment; (2) a disclosure statement; (3) a release of responsibility for valuables; (4) an assignment of insurance benefits; (5) a payment guarantee; and (6) an acknowledgment. *Schroeder*, 371 Ill. App. 3d at 587, 584 N.E.2d at 1015. The disclosure provision stated as follows:

" 'Item 2 disclosure Statement: Your care will be managed by your personal physician or other physicians *who are not employed by Northwest Community Hospital* or Northwest Community Day Surgery Center but have privileges to care for patients at this facility. Your physician's care is supported by a variety of individuals employed by Northwest Community Hospital or Northwest Community Day Surgery Center, including nurses, technicians and ancillary staff. Your physician may also decide to call in consultants who practice in other specialities and may be involved in your care. Like your physician, those consultants have privileges to care for patients at this facility, but are not employed by Northwest Community Hospital or Northwest Community Day Surgery Center.' " (Emphasis in original and omitted.) *Schroeder*, 371 Ill. App. 3d at 587, 584 N.E.2d at 1015.

Notably, in *Schroeder* the decedent signed the consent form on two prior admissions to the hospital, but his wife signed the form on his third and final admission. *Schroeder*, 371 Ill. App. 3d at 593, 584 N.E.2d at 1020. Notwithstanding the consents, we held that there was a genuine issue of material fact as to "whether [the] decedent was confused or misled by the disclosure forms and whether he perceived or believed the physicians were the agents of employees of [the hospital]" and that, therefore, summary judgment was inappropriate. *Schroeder*, 371 Ill. App. 3d at 593, 584 N.E.2d at 1020.

However, Victory Memorial places reliance on *James v. Ingalls Memorial Hospital*, 299 Ill. App. 3d 627, 701 N.E.2d 207 (1998), and *Churkey v. Rustia*, 329 Ill. App. 3d 239, 768 N.E.2d 842 (2002), in support of its position. In *James*, we found the defendant hospital was not vicariously liable where the physician's independent contractor status was clearly set out in the consent. *James*, 299 Ill. App. 3d at 629, 701 N.E.2d at 208. In *James*, the signed consent provided:

> " 'The physicians *** on staff at this hospital are not employees or agents of the hospital, but independent medical practitioners who have been permitted to use its facilities for the care and treatment of their patients. *** I have had the opportunity to discuss [*sic*] this form, and I am satisfied I understand its contents and significance. I may withdraw my consent at any time.' " *James*, 299 Ill. App. 3d at 629, 701 N.E.2d at 208.

In *James* we acknowledged that even the existence of a clear disclaimer would not always be dispositive on the element of holding out under the doctrine of apparent agency, though "[c]ertainly having the patient sign a consent for treatment form which expressly states that 'the physicians on staff at this hospital are not employees or agents of the hospital' may make the proving of this element extremely difficult." *James*, 299 Ill. App. 3d at 633, 701 N.E.2d at 210-11.

In *Churkey*, the Second District affirmed a grant of summary judgment in favor of the hospital based on a consent form which stated in relevant part:

> " 'I understand that Sherman Hospital uses independently contracted physicians and physician's [*sic*] groups to perform specific services such as Anesthesia and Radiological services for the hospital and its patients. The physicians are not employees of Sherman Hospital but have been granted privileges to practice at the institution, and if that is the case, I can expect to receive a separate bill from these physicians or physician groups.' " *Churkey*, 329 Ill. App. 3d at 241, 768 N.E.2d at 844.

The *Churkey* court found that the plaintiff's signing of the consent form indicated that she knew or should have known that the physician was not the hospital's agent. *Churkey*, 329 Ill. App. 3d at 245, 768

N.E.2d at 847. However, there the plaintiff did not present any specific facts to support her assertion that she believed the physician was an employee of the hospital. *Churkey*, 329 Ill. App. 3d at 245, 768 N.E.2d at 847. Accordingly, the court held, "the lack of any facts showing that the hospital 'held out' Dr. Rustia as its agent, *coupled with* the signed consent form clearly indicating that anesthesiologists were not hospital employees, leads us to conclude, as a matter of law, that [the plaintiff] knew or should have known that Dr. Rustia was not the hospital's agent." (Emphasis added.) *Churkey*, 329 Ill. App. 3d at 245, 768 N.E.2d at 847. Nonetheless, the *Churkey* court also acknowledged: "There certainly could be situations in which a patient signs a consent form containing such a disclaimer but additional facts exist that would create a triable issue of fact as to whether the hospital held the defendant physician out as its agent." *Churkey*, 329 Ill. App. 3d at 245, 768 N.E.2d at 847.

In the case *sub judice*, in denying Victory Memorial's posttrial motions for judgment notwithstanding the verdict or a new trial, the court specifically acknowledged the strength of *James* and *Churkey*, but ultimately relied on *Schroeder*. In its ruling, the court stated:

> "If not for the *Schroeder* case, the Court believes that *Churkey* and *James* would have strong positions with respect to what was signed, but because *Schroeder* acknowledges—it's a [F]irst [D]istrict case, because *Schroeder* acknowledges that when these forms are presented, you have to look at the totality of the circumstances as far as the Court is concerned, and under these circumstances, acknowledgment that confusion can create an issue of fact for the jury to determine in this case, Mr. Plouff [plaintiff's counsel] had argued that the—that it was not reasonable to assume that because she had signed the form that she knew or reasonably should have known that Dr. Keene was an independent contractor, the Court denies the motion for judgment notwithstanding the verdict, and the motion for a new trial."

Victory Memorial attempts to distinguish the holding of *Schroeder* on the following grounds: (1) the consent form here was not confusing or misleading; (2) the decedent in *Schroeder* signed the consent form, while plaintiff at bar herself signed the consent; and (3) *Schroeder* was decided at the summary judgment stage, which requires a lower burden of proof.

Addressing the first contention, Victory Memorial maintains that because the consent form in this case contained the specific phrase "independent contractor," it was not confusing. Victory Memorial also places significance on the fact that because plaintiff was conscious and alert in the emergency room when she signed the consent, she must

have been aware of the independent contractor disclaimer. However, plaintiff submits that the multipart consent at issue here was similar to, and equally confusing as, the consent in *Schroeder*. Plaintiff contends that the following facts are supportive of her claim that she neither knew nor should have known of Dr. Keene's independent contractor status: (1) the consent was a confusing multipart form where the independent contractor paragraph was buried in small print in the middle of various paragraphs concerning other matters; (2) the portion of the consent containing the disclaimer paragraph did not have a separate signature line and thus was not signed by plaintiff; (3) the top of the form did not contain plaintiff's name; and (4) the signature line was immediately below a separate section for a release of responsibility for valuables. Accordingly, plaintiff maintains, the jury could reasonably conclude that when plaintiff signed the release, she may have thought that she only signed a release for valuables rather than acknowledging her awareness of the doctor's true status. Additionally, plaintiff notes that at the time she signed the release, her condition in the emergency room was rapidly deteriorating and she was suffering from the symptoms of the bacterial meningitis infection.

Although Victory Memorial attaches significance to paragraph 4 of the consent, it does not adequately address the ambiguity created by the rest of the form. As noted, here the consent, although not identical to the *Schroeder* consent, is clearly similar. Both in *Schroeder* and in the instant case, the consent utilized a multipart format and contained various provisions unrelated to the independent contractor disclaimer. *Schroeder*, 371 Ill. App. 3d at 587, 862 N.E.2d at 1014. Indeed, here the form itself is titled, in capitalized, underlined language, "CONSENT FOR EMERGENCY TREATMENT." The signature line is beneath a separate unnumbered paragraph concerning the release of property. Moreover, immediately preceding the paragraph containing the disclosure is a paragraph stating: "I am aware that during my visit to the Emergency Department of VICTORY MEMORIAL HOSPITAL, *hospital employees* will attend to my medical needs as may be necessary." (Emphasis added.) Thus, the jury could rightfully infer that plaintiff was confused as to which doctors were employees of the hospital and which were independent contractors. Further, in the emergency room, plaintiff had complained of dizziness and problems with her vision, and there was evidence that plaintiff's condition rapidly worsened. For these reasons, a jury could reasonably conclude that the consent was confusing and ambiguous and therefore did not adequately inform plaintiff of her doctor's independent contractor status.

Considering now Victory Memorial's second point, we perceive that it simply raises a distinction without a difference, as the decedent in *Schroeder* had personally signed the form on two prior occasions and thus was familiar with the hospital's form. *Schroeder*, 371 Ill. App. 3d at 587, 862 N.E.2d at 1014. Also, in *Schroeder* the issue was indeed "whether decedent was confused or misled by the disclosure forms and whether he perceived or believed the physicians were the agents or employees of [the hospital]." *Schroeder*, 371 Ill. App. 3d at 593, 862 N.E.2d at 1020.

Finally, we agree with plaintiff that although the standard of review differs for summary judgments, the applicable law governing the standard of proof is the same. Precedent instructs that a ruling on a motion for a directed verdict or summary judgment "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 91 L. Ed. 2d 202, 214, 106 S. Ct. 2505, 2512 (1986). Although *Anderson* was applying the Federal Rules of Civil Procedure, its abiding principle is equally applicable to actions in state court. *Reed v. Northwestern Publishing Co.*, 124 Ill. 2d 495, 512, 530 N.E.2d 474, 482 (1988). In *Schroeder*, we applied the same governing law from our supreme court under *Gilbert* and its progeny. See *Schroeder*, 371 Ill. App. 3d at 590, 862 N.E.2d at 1017. In reversing the grant of summary judgment in *Schroeder*, we expressly concluded that if "there is evidence that decedent reasonably believed his personal care physician and the consulting physicians were agents or employees of the hospital, a triable issue of fact exists and should be presented to a jury." *Schroeder*, 371 Ill. App. 3d at 593-94, 862 N.E.2d at 1020.

Notably, we recently affirmed the grant of summary judgment in favor of a defendant hospital where there was no genuine issue of material fact regarding any "holding out" by the hospital, and where the plaintiff signed a consent form delineating the physician's independent contractor status and had signed such consent forms at the same hospital four times before. See *Wallace v. Alexian Brothers Medical Center*, 389 Ill. App. 3d 1081 (2009). However, in *Wallace*, the factual dispute was whether plaintiff indeed signed the consent, not whether she understood the consent. In *Wallace*, the plaintiff responded to defendant's motion by providing an affidavit in which she averred that although her signature appeared on the consent, informing her of the status of the physician at defendant hospital, she did not personally sign the document and had no knowledge of who placed her signature on it. She also stated that none of the forms were ever explained to her and due to her "limited education" and state of shock at the time her minor daughter was injured, she had no

knowledge that the physicians were independent contractors. *Wallace*, 389 Ill. App. 3d at 1084. In affirming the grant of summary judgment, we determined that plaintiff's affidavit was devoid of supporting facts, as well as being internally inconsistent. *Wallace*, 389 Ill. App. 3d at 1089.

Here, however, it is axiomatic that there are additional facts beyond the independent contractor disclosure in the consent form which support the jury's verdict. We share in the trial court's observation that the instant case comports with the holding of *Schroeder*. We also find that, as in both *Churkey* and *James*, there were additional facts bearing upon the element of "holding out" sufficient to support the jury's determination of liability based on apparent agency.

## B. Reasonable Reliance

Victory Memorial also maintains that plaintiff failed to meet the burden of proving the second element of her claim; that she " 'acted in reliance upon the conduct of the hospital, consistent with ordinary care and prudence.' " *Gilbert*, 156 Ill. 2d at 525, 622 N.E.2d at 795, quoting *Pamperin*, 144 Wis. 2d at 207-08, 423 N.W.2d at 855-56. The hospital asserts that the admission of newspaper advertisements exhaulting the health care it offered cannot suffice to show plaintiff's reasonable reliance, as there was no evidence that plaintiff actually saw the advertisements. In response, plaintiff argues that the advertisements were relevant to establish that the hospital was holding itself out as a complete provider of medical care. Under this objective standard, whether she in fact saw the advertisements is irrelevant. Plaintiff maintains that because she reasonably relied on the hospital to provide such complete medical care in the emergency room, the reliance element was satisfied.

We find plaintiff's contentions are well founded. In speaking to the reasonable reliance element within the hospital setting, our supreme court has established that the reliance standard is satisfied if the plaintiff relies upon the hospital to provide medical care, rather than upon a specific physician. *Gilbert*, 156 Ill. 2d at 525, 622 N.E.2d at 796. Thus, the critical distinction here is whether the plaintiff sought care from the hospital itself or from a personal physician:

> " ' "Except for one who seeks care from a specific physician, if a person voluntarily enters a hospital without objecting to his or her admission to the hospital, then that person is seeking care from the hospital itself. An individual who seeks care from a hospital itself, as opposed to care from his or her personal physician, accepts care from the hospital in reliance upon the fact that complete emergency room care *** will be provided by the hospital through its staff." ' "
> *Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 38, 719

N.E.2d 756, 768 (1999), quoting *Gilbert,* 156 Ill. 2d at 525, quoting *Pamperin,* 144 Wis. 2d at 211-12, 423 N.W.2d at 857.

We find Victory Memorial's attempt to recast the holdings of *York* and *Gilbert* as support for its argument that plaintiff failed to prove the element of "holding out" is unavailing. In focusing on whether the plaintiff actually saw the advertisements, Victory Memorial is misapplying the detrimental reliance element, which has a "specific and limited application" in the hospital medical negligence context. *York,* 222 Ill. 2d at 194, 854 N.E.2d at 661. In *York,* the requirement of "holding out" was not impacted; only the reasonable reliance element was challenged. Our supreme court found that the plaintiff presented sufficient evidence to support the jury's verdict that the hospital was vicariously liable under the doctrine of apparent agency, and thereby affirmed the denial of motion for judgment notwithstanding the verdict. *York,* 222 Ill. 2d at 195, 854 N.E.2d at 662. This holding was bottomed on evidence demonstrating that: (1) there was evidence that the plaintiff had only sought treatment from the physician after he heard that the hospital had good doctors; (2) nothing in the consent form alerted the plaintiff to the physician's independent contractor status; (3) the hospital failed to put the plaintiff on notice that the physician was an independent contractor; and (4) the physician wore either scrubs or a lab coat that had the hospital's logo. *York,* 222 Ill. 2d at 196, 854 N.E.2d at 663. Our supreme court further explained the rationale underpinning its holding in *Gilbert:*

> "In *Gilbert,* this court recognized that the relationship between a patient and health-care providers, both physicians and hospitals, presents a matrix of unique interactions that finds no ready parallel to other relationships. To underscore this point, we set forth in great detail what we termed the 'realities of modern hospital care' and concluded that the fervent competition between hospitals to attract patients, combined with the reasonable expectations of the public that the care providers they encounter in a hospital are also hospital employees, raised serious public policy issues with respect to a hospital's liability for the negligent actions of an independent-contractor physician. It is against this specific factual backdrop that we extended the doctrine of apparent agency to instances wherein a plaintiff seeks to hold a hospital vicariously liable for the malpractice of an independent contractor physician." *York,* 222 Ill. 2d at 192, 854 N.E.2d at 660.

Manifestly, under *Gilbert* our supreme court reaffirmed that the reliance element of a plaintiff's apparent agency claim is satisfied if the plaintiff reasonably relies upon a hospital to provide medical care, rather than upon a specific physician. That principle obtains even in situations where a plaintiff's physician has referred the plaintiff to the

hospital for treatment, if the plaintiff relied on the hospital to provide subsequent treatment by other doctors or specialists without disclosing their independent contractor status. See *McCorry v. Evangelical Hospitals Corp.*, 331 Ill. App. 3d 668, 674, 771 N.E.2d 1067, 1071 (2002); *Scardina v. Alexian Brothers Medical Center*, 308 Ill. App. 3d 359, 367, 719 N.E.2d 1150, 1156 (1999).

In the case *sub judice*, the advertisements were relevant to the element of holding out—whether the hospital held itself out as a provider of complete medical care. Additionally, plaintiff presented evidence that she did not choose Dr. Keene; rather, the hospital provided Dr. Keene to her for her treatment. As plaintiff cogently argues, "[t]he Hospital cannot have it both ways. It cannot advertise it has the best doctors in the community and then tell a jury that there is no evidence that emergency department doctors were its employees." As noted, a motion for judgment notwithstanding the verdict presents a question of whether, considering the evidence and all reasonable inferences in the light most favorable to the plaintiff, there is a total failure or lack of evidence to prove any element of the plaintiff's case. *York*, 222 Ill. 2d at 178, 854 N.E.2d at 652. Under this deferential standard, Victory Memorial was not entitled to that relief.

## II. Motion for New Trial

■ We next consider Victory Memorial's claim that the trial court abused its discretion in denying its motion for a new trial. Well-established precedent dictates that a new trial should be granted only when the verdict is contrary to the manifest weight of the evidence. *York*, 222 Ill. 2d at 178-79, 854 N.E.2d at 652. That standard is met only when the opposite conclusion is clearly evident or when the jury's findings prove to be unreasonable, arbitrary and not based upon any of the evidence. *York*, 222 Ill. 2d at 179, 854 N.E.2d at 652, citing *McClure*, 188 Ill. 2d at 132, 720 N.E.2d at 257. A court of review will not reverse a circuit court's decision with respect to a motion for a new trial unless it finds that the circuit court abused its discretion. *Maple*, 151 Ill. 2d at 455, 603 N.E.2d at 513.

In the proceedings below, the jury heard evidence that the disclosure in the consent form was confusing and plaintiff did not know Keene was an independent contractor. Keene himself testified that he could not think of any reason why anyone would know that he was an independent contractor. The evidence further established that plaintiff did not choose Keene as her doctor but, rather, Keene was provided by Victory Memorial. Therefore, because there was evidence upon which the jury could reasonably base its finding, we conclude that the circuit court did not abuse its discretion in denying Victory Memorial's motion for a new trial.

Victory Memorial further contends that a new trial should have been granted because the judge committed error in admitting evidence of its advertisements. It is the function of the trial court to determine the admissibility of evidence, and its rulings will not be disturbed absent an abuse of discretion. *Jackson v. Seib*, 372 Ill. App. 3d 1061, 1070, 866 N.E.2d 663, 673 (2007). As previously noted, the advertisements were relevant to the element of holding out by the hospital. Victory Memorial's own citation to *Gilbert* for the proposition that the holding out element is satisfied if "the hospital [held] itself out as a provider of emergency room care without informing the patient that the care is provided by independent contractors" (*Gilbert*, 156 Ill. 2d at 525, 622 N.E.2d at 796), illustrates the propriety of admitting the advertisements. Although plaintiff further contends that Victory Memorial waived the issue because it did not ask for a limiting instruction, we find that Victory Memorial's argument centers upon the initial admission of the evidence, rather than on any limiting instruction. We find no error in the admission of this evidence.

●4 Lastly, Victory Memorial argues that the circuit court abused its discretion in denying its motion to transfer the cause to Lake County based on *forum non conveniens*. A motion to transfer based on the *forum non conveniens* doctrine is governed by Supreme Court Rule 187. See 134 Ill. 2d R. 187. A *forum non conveniens* motion "causes a court to look beyond the criterion of venue when it considers the relative convenience of a forum." *Bland v. Norfolk & Western Ry. Co.*, 116 Ill. 2d 217, 226, 506 N.E.2d 1291, 1295 (1987). In ruling on the motion, the circuit court enjoys considerable discretion. *First National Bank v. Guerine*, 198 Ill. 2d 511, 515, 764 N.E.2d 54, 57 (2002). In *Guerine*, our supreme court restated the private and public interest factors to be considered in applying the doctrine of *forum non conveniens*. "[P]rivate interest factors include (1) the convenience of the parties; (2) the relative ease of access to sources of testimonial, documentary, and real evidence; and (3) all other practical problems that make trial of a case easy, expeditious, and inexpensive ***." *Guerine*, 198 Ill. 2d at 516, 764 N.E.2d at 58. Public interest factors include (1) the interest in deciding controversies locally; (2) the unfairness of imposing trial expense and the burden of jury duty on residents of a forum that has little connection to the litigation; and (3) the administrative difficulties presented by adding litigation to already congested court dockets. *Guerine*, 198 Ill. 2d at 516-17, 764 N.E.2d at 58. " 'The test *** is whether the relevant factors, viewed in their totality, strongly favor transfer to the forum suggested by the defendant.' " *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 176, 797 N.E.2d 687, 695 (2003), quoting *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 107-08, 554 N.E.2d 209, 212 (1990).

"The plaintiff has a substantial interest in choosing the forum where his rights will be vindicated, and the plaintiff's forum choice should rarely be disturbed unless the other factors strongly favor transfer." *Guerine*, 198 Ill. 2d at 517, 764 N.E.2d at 58. Our supreme court has repeatedly noted that "the *forum non conveniens* doctrine gives courts discretionary power that should be exercised *only in exceptional circumstances* when the interests of justice require a trial in a more convenient forum." (Emphasis in original.) *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 442, 848 N.E.2d 927, 934 (2006), citing *Guerine*, 198 Ill. 2d at 520, 764 N.E.2d at 60. Accordingly, the burden is on the defendant to prove that the balance of the appropriate factors "strongly favors" transfer, and a trial court must evaluate the total circumstances of the case. *Hackl v. Advocate Health & Hospitals Corp.*, 382 Ill. App. 3d 442, 448, 887 N.E.2d 726, 732 (2008). "An abuse of discretion will be found where no reasonable person would take the view adopted by the trial court." *Dawdy*, 207 Ill. 2d at 177, 797 N.E.2d at 696.

Plaintiff initially argues that Victory Memorial has waived its *forum non conveniens* argument by not renewing its motion at the close of all the evidence. However, Victory Memorial correctly responds that plaintiff's argument is based on the provisions of the general venue statute (735 ILCS 5/2—105 (West 1998)), which are not applicable here. A motion to transfer based on *forum non conveniens* is governed by Supreme Court Rule 187, which does not contain a similar waiver provision, but requires only timely filing of the motion, which is not disputed here. See 134 Ill. 2d R. 187.

In the instant case, in denying the motion to transfer, the circuit court found that none of the private interest factors or public interest factors weighed strongly in Victory Memorial's favor. The court noted that plaintiff was a resident of Cook County when she filed suit and had only recently moved to California; Dr. Riff and three of plaintiff's treating physicians were residents of Cook County; Victory Memorial did not show that all respondents-in-discovery would be necessary for trial; and the difference in travel time between an hour and a half and 30 minutes was not sufficient enough to grant the motion to transfer the cause. Regarding the relative ease of access to sources of proof, the court noted that defendant Dr. Riff and three other of plaintiff's treating physicians had offices in Cook County, and the medical records could easily be transported to either forum. The court also found that Victory Memorial did not articulate any other factor or problem that would make the trial easier or less expensive in Lake County. Regarding docket congestion, the court specifically stated it had its own calendar call and that the case could be readied for trial in the same

amount of time as a case in Lake County. Further, the court found that imposing jury duty on Cook County residents "may not be unfair," given that one of the defendants and several treating physicians were in Cook County, and the close proximity of Lake County to Cook County.

Victory Memorial contends that because plaintiff was not a resident of Cook County, and since the cause of action did not arise in Cook County but rather in Lake County, her forum choice should be given less deference than it would be given if she were a resident of the forum selected. However, at the time plaintiff filed this action, she was indeed a resident of Cook County. Victory Memorial also asserts that Lake County is more appropriate because Cook County courts are more congested. However, our supreme court has held that "[c]ourt congestion is a relatively insignificant factor, especially where the record does not show the other forum would resolve the case more quickly." *Guerine*, 198 Ill. 2d at 517, 764 N.E.2d at 58. Here, the trial court specifically stated it had its own calendar call and that the case could be readied for trial in the same amount of time as a case in Lake County.

We agree with the circuit court's determination that Victory Memorial provided no reasons weighing strongly in favor of transferring venue to Lake County. Although Victory Memorial argued inconvenience due to parking costs and traffic congestion, plaintiff's affidavit in opposition averred that Cook County would be a more convenient forum for her due to the fact that she was in a wheelchair and O'Hare Airport would be more accessible and have more hotel availability, as opposed to traveling to an airport in Waukegan. We also observe that plaintiff ultimately testified by way of a live video feed from California. As plaintiff points out, Victory Memorial did not show that Lake County had a similar capability of a live video feed. Other witnesses also testified by way of live video feed. One expert witness resided in Cook County, and another was from Michigan. None of the experts resided in Lake County. Also, as plaintiff argued below, Keene lived only three miles from the Cook County border and also worked in Cook County.

Victory Memorial argues that the only defendant who was a resident of Cook County, Riff, was joined as a defendant solely for the purpose of establishing venue. However, the same distinction Victory Memorial itself drew between the general venue statutory provisions and Supreme Court Rule 187 governing *forum non conveniens* motions, in countering plaintiff's waiver argument, applies here. Section 2—101 of the Code provides that venue lies in the county of residence of "any defendant who is joined *in good faith* *** or in the county in

which the transaction or some part thereof occurred out of which the cause of action arose." (Emphasis added.) 735 ILCS 5/2—101 (West 1998). Thus, bad faith in joining a defendant to establish venue is an objection under the general venue provisions. In contrast, in deciding a *forum non conveniens* motion, initial bases for venue under section 2—101 have been established, but where there is more than one appropriate forum under section 2—101, the court determines whether another forum is more convenient for litigation. See *Dawdy*, 207 Ill. 2d at 171-72, 797 N.E.2d at 693. Thus, Victory Memorial's bad-faith argument regarding the joinder of Riff is somewhat misplaced. A defendant's motion to dismiss for *forum non conveniens* should not be analogized to an objection to improper venue. *Grant v. Starck*, 96 Ill. App. 3d 297, 300-01, 421 N.E.2d 268, 271 (1981).

Even considering Victory Memorial's argument, we agree with plaintiff that good faith may exist regardless of the failure to produce evidence against a defendant (*Young v. Cerniak*, 126 Ill. App. 3d 952, 964, 467 N.E.2d 1045, 1053 (1984)), and a directed verdict against a defendant does not demonstrate bad faith (*Novak v. Thies*, 89 Ill. App. 3d 991, 993, 412 N.E.2d 666, 668 (1980)). As the *Novak* court recognized, plaintiff's counsel may need a "flexible trial strategy" in multiple-party cases. *Novak*, 89 Ill. App. 3d at 993, 412 N.E.2d at 668. Plaintiff offers numerous reasons why she named but did not ultimately pursue the negligence claim against Riff, among those being: plaintiff desired to avoid an "empty chair" defense on the part of the other defendants, although the case against Riff was relatively weak as compared with the other defendants; Riff's continued presence as a defendant may have confused the jury as to the timing of plaintiff's injury; an adverse ruling by the trial court in limine restricted plaintiff's claim against Riff to only damages for cognitive harm, not cranial or motor, and would have necessitated the use of a complicated verdict form if Riff were kept in the case; and Riff had her own medical problems and would have perhaps been a sympathetic defendant to the jury. All of these reasons lead us to believe that Riff was joined in good faith.

Nonetheless, Victory Memorial maintains that, regardless of good or bad faith, Riff was not the focus of plaintiff's case, thereby rendering her residence inconsequential in a *forum non conveniens* determination, citing to *Allee v. Myers*, 349 Ill. App. 3d 596, 812 N.E.2d 522 (2004), and *Kahn v. Enterprise Rent-A-Car Co.*, 355 Ill. App. 3d 13, 822 N.E.2d 94 (2004). However, both cases are distinguishable. In *Allee*, nearly all of the private and public interest factors weighed in favor of the defendant's suggested county, Stephenson County, rather than the plaintiffs' chosen forum, Cook County. *Allee*, 349 Ill. App. 3d

at 606-07, 812 N.E.2d at 532-33. In *Allee*, the focus of the claim was a commercial building involved in the negligence action against the defendant building owners who failed to notify tenants of the felony status of the codefendant who kidnapped and raped one of the plaintiffs, and not where those individuals purchased the weapon and committed the sexual assaults. *Allee*, 349 Ill. App. 3d at 606, 812 N.E.2d at 532. Additionally, there was the possibility of having the jury view the building. *Allee*, 349 Ill. App. 3d at 607, 812 N.E.2d at 532-33. Further, the Cook County witnesses' testimony would most likely have related to the codefendant's conduct, rather than the conduct of the defendant property owners. Thus, venue strongly weighed in favor of the county of the situs of the building. *Allee*, 349 Ill. App. 3d at 607, 812 N.E.2d at 533.

The same rationale obtained in *Kahn*, where all of the factors weighed in favor of transferring the cause to Du Page County. In *Kahn*, the car accident occurred in Du Page, both the parties as well as all of the witnesses resided there, and the accident victims received treatment there. The only connection to Cook County was subsequent medical treatment, which was not at issue, as there was no claim for medical negligence in the case. *Kahn*, 355 Ill. App. 3d at 23-24, 822 N.E.2d at 104. Conversely, here the alleged negligent conduct of defendants, including Riff, was indeed at issue, and several of plaintiff's treating physicians were in Cook County.

Plaintiff further submits that Victory Memorial has failed to provide any authority supporting reversal based on *forum non conveniens* after a full trial, absent other error. See *Brdar v. Cottrell, Inc.*, 372 Ill. App. 3d 690, 867 N.E.2d 1085 (2007). We find the rationale of *Brdar* persuasive. In *Brdar*, after recognizing cases involving *forum non conveniens* challenges postverdict, the court stated:

> "The fact that this case comes to us after a full trial is nevertheless extremely relevant. Each of the cases cited by [the defendant] required a reversal on other grounds. Here, although we will remand for further proceedings that might result in a new trial limited to punitive damages, we need not remand for a trial on all issues. This distinction is critical because the hallmark of the doctrine of *forum non conveniens* is convenience. [Citation.] Were we to reverse the verdict on grounds of *forum non conveniens* alone, we would be requiring the parties to go through an otherwise unnecessary second trial in a different forum after going through a Madison County trial. To hold that a doctrine designed to promote convenience can lead to that result would be absurd." *Brdar*, 372 Ill. App. 3d at 707, 867 N.E.2d at 1101.

We note that we previously denied Victory Memorial's petition for leave to appeal the trial court's ruling on its *forum non conveniens* motion pursuant to Supreme Court Rule 306(a)(2). Under our standard of review, we find that Victory Memorial has failed to sustain its burden of showing the trial court's ruling was an abuse of discretion. We therefore affirm the circuit court's order denying Victory Memorial's motion for a new trial.

## III. Cross-Appeal

■ Plaintiff also cross-appeals, contending the court erred in remitting $2.4 million of the verdict on the grounds that damages for past and future suffering are duplicative of damages for loss of a normal life. "A remittitur is an agreement by the plaintiff to relinquish, or remit, to the defendant that portion of the jury's verdict which constitutes excessive damages and to accept the sum which has been judicially determined to be properly recoverable damages." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 253, 856 N.E.2d 389, 409 (2006). "A jury's award will not be subject to remittitur where it falls within the flexible range of conclusions which can be reasonably supported by the facts. [Citation.]" *Riley v. Koneru*, 228 Ill. App. 3d 883, 888, 593 N.E.2d 788, 792 (1992).

The parties disagree as to which standard of review applies. Here, over objection, the trial court gave a modified jury instruction from Illinois Pattern Jury Instructions, Civil, No. 30.05 (2000) (hereinafter IPI Civil (2000) No. 30.05), only for "suffering," removing any mention of "pain." The trial court has the discretion to determine if a particular jury instruction is applicable, supported by evidence in the record, and an accurate statement of the law. *Luye v. Schopper*, 348 Ill. App. 3d 767, 773, 809 N.E.2d 156, 161 (2004). Once a trial court determines an instruction is to be given, Supreme Court Rule 239(a) (177 Ill. 2d R. 239(a)) creates a presumption that the pattern instructions are to be used, unless the court determines that the IPI does not accurately state the law. *Luye*, 348 Ill. App. 3d at 773, 809 N.E.2d at 162. Whether the instruction is an accurate statement of the law in Illinois is a pure question of law, which we review *de novo*. *Luye*, 348 Ill. App. 3d at 773, 809 N.E.2d at 162.

Plaintiff maintains that the court erred in granting the remittitur because damages for "suffering" were not duplicative of damages for loss of a normal life. In support, plaintiff cites to *Holston v. Sisters of the Third Order of St. Francis*, 247 Ill. App. 3d 985, 618 N.E.2d 334 (1993), *aff'd*, 165 Ill. 2d 150, 650 N.E.2d 985 (1995). Our supreme court, however, affirmed the damages awarded for pain and suffering because it found there was indeed evidence of pain suffered by the

plaintiff. *Holston*, 165 Ill. 2d at 174-75, 650 N.E.2d at 996-97. Here, conversely, there was no evidence of pain or future pain adduced at trial, and thus the court gave a modified instruction removing any mention of pain.

We agree with Victory Memorial that the issue is not whether "loss of a normal life" is a properly compensable separate element of damages, which it is (see IPI Civil (2000) No. 30.04.01), but whether "suffering" alone here was not an accurate statement of the law and was duplicative of damages for loss of a normal life. Plaintiff provides no authority for the proposition that "suffering" alone is an element of damages apart from "pain and suffering," which is found in IPI Civil (2000) No. 30.05. Victory Memorial cites to *Powers v. Illinois Central Gulf R.R. Co.*, 91 Ill. 2d 375, 438 N.E.2d 152 (1982), where our supreme court held that it was error to allow a jury to assess separate amounts for the nature, extent and duration of the injury in addition to disability, pain and suffering and the value of earnings lost. *Powers*, 91 Ill. 2d at 378-79, 438 N.E.2d at 153-54. Similarly here, we find that the trial court ruled correctly that it should not have allowed a separate award for past and future "suffering" in addition to a separate award for past and future loss of a normal life. We therefore affirm the remittitur of "suffering experienced" and "suffering reasonably certain to be experienced in the future," in the combined amount of $2.4 million.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's denial of Victory Memorial's motion for judgment notwithstanding the verdict and motion for a new trial. We also affirm the trial court's grant of remittitur in the amount of $2.4 million.

Affirmed.

FITZGERALD SMITH, P.J., and O'MARA FROSSARD, J., concur.