RICHARD McCORRY *et al.*, Plaintiffs-Appellants, v. EVANGELICAL HOSPITALS CORPORATION, f/k/a Christ Hospital and Medical Center, Defendant-Appellee (Thomas Hurley, Defendant).

First District (1st Division)   No. 1—01—1227

Opinion filed June 3, 2002.

Ambrose & Cushing, P.C., of Chicago (John C. Ambrose, F. John Cushing III, Thomas M. Cushing, and Marilyn Martin, of counsel), for appellants.

Cassiday, Schade & Gloor, of Chicago (Rudolf G. Schade, Kyle R. Burkhardt, and Donald F. Evansek, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

After surgery left Richard McCorry paralyzed, he and his wife, Barbara McCorry, sued the surgeon, Dr. Thomas Hurley, and Christ Hospital, where Hurley performed the surgery. Plaintiffs asserted that the hospital had *respondeat superior* liability for Hurley's alleged medical malpractice. The court held that no evidence showed that Hurley acted as the hospital's actual or apparent agent, and therefore the court granted the hospital's motion for summary judgment. Plaintiffs now appeal.

Barbara McCorry worked for Christ Hospital, and her health plan provided insurance coverage for Richard. In 1993 Richard went to see Dr. Andrew Kazaniwskyj for a heart problem. Kazaniwskyj and a specialist at Christ Hospital successfully treated the problem.

Richard also had back pain that prevented him from sitting for prolonged periods. The pain steadily worsened through 1993 and early 1994, to the point that Richard could no longer drive. In June 1994 Kazaniwskyj admitted Richard to Christ Hospital for a neurosurgery consultation. CNS Neurological Surgery provided neurosurgery services at Christ Hospital. Hurley, a neurosurgeon with CNS Neurological Surgery, examined Richard and ordered a magnetic resonance imaging (MRI) test of the upper part of Richard's spine, the part in his neck.

Although Hurley recommended surgery, Richard preferred to try physical therapy and epidural injections to control the pain. Richard's condition steadily worsened over the following months. Richard finally agreed that he needed the surgery. For his last presurgery physical, on October 20, 1994, Richard came to Kazaniwskyj's office in a wheelchair.

Hurley performed the surgery on October 27, 1994. When Richard awoke after surgery Hurley tested his condition and found Richard unable to move his legs. Hurley ordered a new MRI. Although he discussed the possibility of further surgery with plaintiffs, he did not recommend surgery, as he had little hope of restoring any function to the legs. Richard remains paralyzed.

In their complaint plaintiffs alleged that Richard's paralysis resulted from Hurley's negligence, and plaintiffs sought to hold the hospital liable for Hurley's acts. The hospital, in a motion for summary judgment, claimed that Hurley was neither its actual nor its apparent agent. The hospital's director of risk management swore that Christ Hospital did not employ Hurley and paid him no wages or salary. Instead, Hurley maintained an independent medical practice, and the hospital granted him limited medical staff privileges allowing him to practice at Christ Hospital.

The hospital also attached to its summary judgment motion

transcripts of the depositions of Richard McCorry and Dr. Kazaniwskyj. Richard said he first came in contact with Hurley through Kazaniwskyj's recommendation. Richard thought Hurley was on the hospital's staff. Kazaniwskyj testified that he did not remember exactly what he said when he referred Richard for the neurosurgery consultation, but he referred him either to Dr. Stavros Maltezos or to CNS Neurological Surgery. Maltezos worked for CNS Neurological Surgery. CNS Neurological Surgery had a policy of asking new patients if they would accept the next available neurosurgeon.

Plaintiffs submitted their affidavits and several hospital publications in response to the summary judgment motion. In the literature Christ Hospital claimed that it provided a hospital staff including hundreds of highly qualified physicians, and it referred to the doctors as "our physicians." The hospital's consent form for the operation included no indication that Christ Hospital did not employ the surgeons or other physicians working in the hospital. Richard swore that he saw Hurley only in the hospital and the office building at the hospital. He accepted Kazaniwskyj's referral to other doctors on Christ Hospital's staff, including Hurley, because of his confidence in Christ Hospital and the doctors on its staff. Barbara swore in an affidavit that she and Richard chose Christ Hospital for treatment both because of her insurance and because they had been satisfied with the care they received at the hospital.

The trial court granted Christ Hospital summary judgment and found no reason to delay enforcement or appeal of the judgment. The lawsuit remains viable against Hurley. Plaintiffs filed a timely notice of appeal, so that we have jurisdiction under Supreme Court Rule 304(a). 155 Ill. 2d R. 304(a). We review the summary judgment *de novo*. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113, 649 N.E.2d 1323 (1995).

■ Plaintiffs contend that they presented sufficient evidence to support a finding that Hurley acted as the hospital's apparent agent. Our supreme court, in *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 622 N.E.2d 788 (1993), adopted the Wisconsin Supreme Court's standards for finding that an allegedly negligent doctor acted as a hospital's apparent agent.

" 'For a hospital to be liable under the doctrine of apparent authority, a plaintiff must show that: (1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff

acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence.' " *Gilbert*, 156 Ill. 2d at 525, quoting *Pamperin v. Trinity Memorial Hospital*, 144 Wis. 2d 188, 207-08, 423 N.W.2d 848, 855-56 (1988).

Here, the hospital published literature referring to physicians who work at the hospital as its physicians and claiming that the expertise of those physicians made the hospital a desirable place for medical care. CNS Neurological Surgery maintained an office on hospital grounds, in a building connected to the hospital. Nothing in Hurley's appearance or the forms the hospital presented to plaintiffs showed that Hurley did not act as the hospital's agent. The hospital advertised itself as a full-care facility supplying quality health care. The evidence could support a finding that the hospital held itself out as the principal for its agents, including the highly qualified physicians, who directly provided the advertised health care. See *Gilbert*, 156 Ill. 2d at 520; *Sztorc v. Northwest Hospital*, 146 Ill. App. 3d 275, 278, 496 N.E.2d 1200 (1986).

Christ Hospital argued principally that plaintiffs could not establish the third element of *Gilbert*'s requirements for apparent agency. The trial court agreed, holding that no trier of fact could find on this record that plaintiffs relied on the appearance of agency.

■ The court in *Gilbert* also adopted the Wisconsin Supreme Court's analysis of the reliance element of apparent agency. The court said:

" '[T]he critical distinction is whether the plaintiff is seeking care from the hospital itself or whether the plaintiff is looking to the hospital merely as a place for his or her personal physician to provide medical care. Except for one who seeks care from a specific physician, if a person voluntarily enters a hospital without objecting to his or her admission to the hospital, then that person is seeking care from the hospital itself. An individual who seeks care from a hospital itself, as opposed to care from his or her personal physician, accepts care from the hospital in reliance upon the fact that complete emergency room care—from blood testing to radiological readings to the endless medical support services—will be provided by the hospital through its staff.' " *Gilbert*, 156 Ill. 2d at 525-26, quoting *Pamperin*, 144 Wis. 2d at 211-12, 423 N.W.2d at 857.

The Wisconsin Supreme Court explained *Pamperin* in *Kashishian v. Port*, 167 Wis. 2d 24, 481 N.W.2d 277 (1992), which our supreme court quoted as further authority in *Gilbert*, 156 Ill. 2d at 520, 522. In *Kashishian* the decedent's personal physician admitted her into the defendant hospital for a consultation with the defendant cardiologist. The personal physician requested the consultation. The cardiologist's

negligence allegedly caused the decedent's death, and the plaintiff sought to hold the hospital liable for the acts of the cardiologist. The trial court granted the hospital summary judgment.

On appeal the Wisconsin Supreme Court first held that the doctrine of apparent agency applied to hospitals, especially in the context of emergency care, but the doctrine could also apply for nonemergency situations. *Kashishian*, 167 Wis. 2d at 42-43, 481 N.W.2d at 284. The court continued:

> "Furthermore, we are not persuaded by [defendants'] argument that, although perhaps not limited to the emergency room, the doctrine of apparent authority does not apply when a patient is admitted to the hospital by his/her personal attending physician and then receives the services of the hospital. As one court discussing this issue has noted:
>
>> The relevant relationship in this case is between the hospital and Temply, [the surgical independent contractor resident] not between it and any private physician with whom the plaintiff contracted. The fact that plaintiff contracted with a private physician as her primary surgeon is not, as a matter of law, inconsistent with hospital's having clothed Temply [the independent contractor physician] with ostensible authority to act as its agent in assisting the private doctors. *Shephard v. Sisters of Providence*, [89 Or. App. 579, 588], 750 P.2d 500, 505 (Or. App. 1988).
>
> We agree. Nor is the plaintiff's contact with a private personal physician necessarily inconsistent with the hospital having held out specialists and/or consultants as its apparent agents." *Kashishian*, 167 Wis. 2d at 42-43, 481 N.W.2d at 284.

The court explained the statement in *Pamperin* about the patient who seeks care from a personal physician with hospital admitting privileges: if the plaintiff claims that her personal physician acted negligently, and she chose the physician prior to the choice of the hospital, then the plaintiff could not hold the hospital liable for that physician's negligence. *Kashishian*, 167 Wis. 2d at 44, 481 N.W.2d at 285. But the hospital might remain responsible for the alleged negligence of doctors the personal physician consulted, if the hospital held out the consulted specialists as its apparent agents. Under the facts of *Kashishian*, the court found a dispute of material fact concerning the question of apparent agency.

Thus, under *Kashishian* and *Pamperin* as adopted in *Gilbert*, the court must determine whether the appearance of agency led to the relationship between plaintiffs and Hurley, the allegedly negligent doctor. The fact that Richard's personal physician referred Richard for the neurosurgery consultation is not, in itself, sufficient to require

judgment in favor of the hospital. See *Scardina v. Alexian Brothers Medical Center*, 308 Ill. App. 3d 359, 366, 719 N.E.2d 1150 (1999).

Here, Dr. Kazaniwskyj referred Richard for a consultation with Dr. Maltezos or CNS Neurological Surgery, the group that provided neurosurgical care as staff members of Christ Hospital. Richard accepted care from Dr. Hurley, the next available neurosurgeon. Richard swore that he thought Hurley was a neurosurgeon on the staff of Christ Hospital. Richard accepted Hurley's treatment because of his confidence in Christ Hospital and the doctors on staff there. Christ Hospital presented no evidence that it informed plaintiffs that Hurley was an independent contractor and not the hospital's agent. Christ Hospital did not inform plaintiffs that the hospital accepted no responsibility for the choice of Hurley as the neurosurgeon performing Richard's operation.

We find this case effectively indistinguishable from *Scardina*. In that case the plaintiff's personal physician told him to see a surgeon at the defendant hospital. The surgeon consulted a radiologist, an independent contractor on the hospital's staff. The plaintiff alleged that the radiologist acted negligently and sought to hold the hospital liable for the injuries the radiologist caused. The trial court granted the hospital summary judgment because the plaintiff went to the hospital based on his personal physician's instructions.

The appellate court reversed, holding that the plaintiff presented sufficient evidence to create a genuine issue of material fact as to whether the plaintiff looked to the hospital to provide radiological services. The court emphasized evidence that the plaintiff never met the radiologist before arriving at the hospital, the personal physician did not refer to the specific radiologist, and the plaintiff did not select the radiologist. The plaintiff claimed he thought the hospital employed the radiologist, who never said he was an independent contractor or discussed his employment status with the plaintiff.

■ Here, plaintiffs never met Hurley before Richard arrived at Christ Hospital. Richard's personal physician did not refer him specifically to Hurley. Richard did not select the neurosurgeon; he simply accepted the referral to the next available neurosurgeon on the hospital staff. He did not know of Hurley's employment status, and Hurley never discussed the status with Richard. Under *Scardina*, Richard has presented sufficient evidence to create a triable issue of fact regarding his reliance on the appearance that Hurley acted as an agent of Christ Hospital. See also *Kane v. Doctors Hospital*, 302 Ill. App. 3d 755, 762, 706 N.E.2d 71 (1999).

Christ Hospital points out that the court in *Butkiewicz v. Loyola University Medical Center*, 311 Ill. App. 3d 508, 724 N.E.2d 1037

(2000), affirmed summary judgment for the defendant hospital charged with responsibility for its radiologist's negligence because the plaintiff's personal physician referred him to the hospital for treatment. *Butkiewicz* appears distinguishable because in that case the plaintiff explicitly testified that he did not trust the hospital and he trusted only his personal physician. But the court also focused improperly on the plaintiff's reasons for choosing the hospital, rather than the plaintiff's reasons for accepting treatment from the allegedly negligent physician. As we find that the court in *Butkiewicz* misapplied *Gilbert*, and used reasoning inconsistent with the reasoning of *Pamperin* and *Kashishian* as adopted in *Gilbert*, we will not apply the reasoning of *Butkiewicz* here.

If a plaintiff shows that he relied in part on the hospital when he accepted treatment from an allegedly negligent doctor, he has met the reliance element of the proof needed to hold the hospital liable under the theory of apparent agency. Plaintiffs here presented such evidence. Plaintiffs also presented evidence that the hospital, in its literature, advertised itself in a manner that might lead a reasonable person to conclude that the hospital accepted responsibility for its choice of doctors to give the advertised health care, and thus that the doctors acted as the hospital's agents. Accordingly, we reverse the summary judgment entered in favor of Christ Hospital on the count charging the hospital with liability for Hurley's alleged negligence.

Reversed and remanded.

COHEN, P.J., and COUSINS, J., concur.