2020 IL App (2d) 190346
No. 2-19-0346
Opinion filed June 11, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| SHERRI PRUTTON, Individually and as Mother and Next Friend of Alexis V., a Minor, | ) ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 14-L-34 |
| JOSEPH R. BAUMGART, PAULA HOBSON, KISHWAUKEE COMMUNITY HOSPITAL, and NORTHERN ILLINOIS FERTIILTY, S.C., | ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (Kishwaukee Community Hospital, Defendant-Appellee). | ) ) ) | Honorable William P. Brady, Judge, Presiding. |

JUSTICE BRIDGES delivered the judgment of the court, with opinion.
Justices McLaren and Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff, Sherri Prutton, individually and as mother and next friend of Alexis V., a minor, appeals from the trial court's grant of summary judgment in favor of Kishwaukee Community Hospital (Kishwaukee). Plaintiff argues that the trial court erred in ruling that Dr. Paula Hobson was not acting as Kishwaukee's apparent agent when Hobson oversaw Prutton's labor and performed the delivery of Alexis at Kishwaukee. During the delivery, Alexis had a shoulder

dystocia that resulted in a brachial plexus injury, causing nerve damage that affected the use of her right arm. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3 On April 25, 2014, plaintiff filed a five-count complaint against Hobson, Kishwaukee, Northern Illinois Fertility, S.C. (NIF), and Dr. Joseph R. Baumgart. Plaintiff alleged that she was admitted to Kishwaukee on October 20, 2010, and that its agents and employees provided care and treatment to her during the labor and delivery of Alexis. She alleged that Kishwaukee had medical personnel acting as apparent agents of the hospital and that no one informed plaintiff that they were not Kishwaukee employees.

¶ 4 In the count directed solely against Kishwaukee,[1] plaintiff alleged, among other things, that Hobson was an apparent agent of Kishwaukee; that Hobson was negligent in her delivery techniques, causing Alexis to sustain significant, permanent injuries to her brachial plexus; and that Kishwaukee was vicariously liable for the injuries.

¶ 5 On January 26, 2015, the trial court entered an order granting plaintiff's request to voluntarily dismiss Baumgart.

¶ 6 Plaintiff's discovery deposition was taken on August 5, 2015; we summarize her testimony. Plaintiff was born in July 1971. In addition to Alexis, plaintiff had two other daughters, born in 1995 and 1997 at Kishwaukee, when plaintiff was under the care of Dr. Emile Hirsch. Plaintiff found out that she was pregnant with Alexis in January 2010, but Hirsch had moved out of state by that time. Plaintiff contacted her insurance carrier about her treatment options, and she

---

[1] Plaintiff also included a count against all defendants, under the Family Expense Act (750 ILCS 65/15 (West 2010)), alleging that she had and would continue to incur costs in caring for Alexis.

specifically requested a doctor who delivered at Kishwaukee. She wanted to give birth at Kishwaukee because she had gone there for medical care as a child and for the birth of her other children and was comfortable there. It was also near her home. Before the pregnancy with Alexis, plaintiff had seen television and billboard advertising for Kishwaukee.

¶ 7 Plaintiff was advised that NIF accepted her insurance, so she went there for her prenatal care. NIF was in a building across the street from Kishwaukee. Plaintiff mostly saw Baumgart, but she also saw Hobson two or three times because Baumgart had told her that Hobson would deliver the baby if he was unavailable. Hobson did in fact turn out to be the delivering physician. Plaintiff thought that both doctors worked for Kishwaukee, because she "knew that [they] would be delivering" there. Neither doctor specifically told her that they did not work for Kishwaukee.

¶ 8 Plaintiff went into labor on October 20, 2010. She was admitted to Kishwaukee and taken to the delivery room at about 6 p.m. At about 8:15 p.m., she signed two informed consent forms, namely a patient authorization record and a consent for obstetrical services. Alexis was born on October 21, 2010, at 2:29 a.m.

¶ 9 The patient authorization record contained eight subsections, one of which was entitled "**PHYSICIAN SERVICES**." (Emphasis in original.) This subsection stated:

> "I understand that I am financially responsible for the professional services of radiologist(s), pathologist(s), cardiologist(s), anesthesiologist(s), and other physician charges which are not billed by the hospital. **Physicians providing care are independent contractors and are not employees or agents of KCH/VWCH.** I hereby authorize my third party payor to directly pay the above named parties or their service corporation. I hereby authorize release of information requested by insurance/billing agencies to the above named parties." (Emphasis in original.)

Plaintiff signed her initials after this subsection, and signed the signature line at the bottom of the document. At her deposition, plaintiff testified that she could understand the paragraph "now."

¶ 10 The second consent form stated that it was for "obstetrical delivery" and contained eight bulleted paragraphs on the first of two pages. The sixth paragraph stated, "I understand that the physicians who participate in the procedure (for example: surgeon, assistants, anesthesiologist, obstetrician, pathologist, and the like) are independent practitioners and are not employees or agents of Kishwaukee Community Hospital." On the second page, above the signature line, the form stated:

> "**My signature below constitutes my acknowledgement that:**
>
> **1. I have read, understand, and agree to the foregoing items.**
>
> **2. The proposed operation/procedure has been satisfactorily explained to me and I have all of the information I desire, and all of my questions have been answered.**
>
> **3. I hereby give my authorization and consent**. (Emphasis in original.)"

Plaintiff signed the signature line below this disclaimer. At her deposition, plaintiff testified that she could "basically understand" the sixth paragraph from the consent form and the sentence from the above-quoted paragraph stating that she had read, understood, and agreed to the foregoing items.

¶ 11 Hobson was deposed on November 17, 2015. As relevant here, she testified that she worked for NIF from September 2009 to May 2012. NIF was an independent practice that Baumgart owned and managed. Hobson worked there pursuant to a physician independent- contractor agreement. During the delivery, Hobson wore hospital scrubs that were marked "Kishwaukee Hospital" "[i]n the back where the tag" was, but nowhere else.

¶ 12  In its response to requests to admit, Kishwaukee admitted that Hobson was displayed on the hospital's website in 2009 and 2010 and that the website did not specifically state that she was not a hospital employee. Kishwaukee also admitted the genuineness of five print advertisements relating to Hobson that it distributed, disseminated, or published to the public. A press release dated October 14, 2009, had the title "Kish Hospital Welcomes New Doctors" and listed Hobson, among others. It stated that she had "recently joined the medical staff" and was practicing with Baumgart at NIF. A second advertisement stated that Kishwaukee was "pleased to welcome" Hobson, who had "joined the medical staff" and was practicing with Baumgart of NIF. It listed NIF's contact information. A third advertisement had similar content but also contained a large photograph of Hobson.

¶ 13  On November 8, 2018, Kishwaukee filed a motion for summary judgment. We summarize Kishwaukee's argument as relevant for this appeal. There was no evidence that Hobson committed acts creating the appearance of apparent agency or that Kishwaukee acquiesced to any such acts or representations. In other words, plaintiff failed to demonstrate that Kishwaukee acted in a manner that would lead a reasonable person to conclude that Hobson was its agent. Plaintiff, through her insurance company, selected NIF as a practice and Baumgart and Hobson as her doctors, when she found out that she was pregnant. NIF's office was not located within Kishwaukee. During plaintiff's prenatal care, Baumgart referred her to the maternal fetal medicine department of Rockford Memorial Hospital, which was also an entity distinct from Kishwaukee. Furthermore, Hobson and Kishwaukee affirmatively communicated to plaintiff that Hobson was not an agent of Kishwaukee, through the informed consent forms.

¶ 14  In plaintiff's response to Kishwaukee's motion for summary judgment, she did not oppose summary judgment as to the allegations of nursing negligence and actual agency. On the subject

of Hobson's apparent agency, she argued that Kishwaukee's advertising about Hobson created a genuine question of material fact about whether Kishwaukee "held out" Hobson as an employee. Plaintiff argued that the consent forms were not dispositive of the issue, because she signed the forms about two hours after being admitted to the hospital—while she was in labor— and the forms were ambiguous and confusing. Finally, plaintiff argued that she relied on Kishwaukee's services for labor and delivery care rather than on the services of Hobson or any other particular physician.

¶ 15  Plaintiff attached to her response an affidavit in which she stated, among other things, that she chose Kishwaukee as the place to deliver Alexis and therefore requested a doctor who delivered babies there. She believed that both Baumgart and Hobson were Kishwaukee employees. None of the Kishwaukee advertisements that she had seen before becoming pregnant with Alexis stated that the doctors there were not employed by the hospital. The "general theme" of the advertisements "was that Kishwaukee Community Hospital provided high quality, full service medical care to the community and that the doctors there had great expertise." She chose Kishwaukee based on her prior experiences there and its reputation.

¶ 16 Kishwaukee filed a reply to plaintiff's response, and the parties argued the summary judgment motion at a hearing on February 27, 2019. On that date, the trial court granted the motion in favor of Kishwaukee as to actual agency.

¶ 17 The trial court issued its ruling on the question of apparent agency on April 3, 2019, stating as follows. The seminal case on the issue of whether a hospital was liable under the doctrine of apparent agency was *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511 (1993). That case stated that the plaintiff had to show that (1) the hospital or its agent acted in a manner that would lead a reasonable person to conclude that the allegedly negligent individual was an employee or

agent of the hospital; (2) if the agent's acts created the appearance of authority, the hospital had knowledge of the acts or acquiesced in them; and (3) the plaintiff acted in reliance on the conduct of the hospital or its agent consistent with ordinary care and prudence.

¶ 18 The trial court concluded that plaintiff met her burden for the first factor, in that Kishwaukee's advertising using Hobson's biographical data and her likeness could lead a reasonable person to believe that there was an employment relationship between Kishwaukee and Hobson. However, the third factor was "complicated" because it raised the question of how plaintiff could rely on the advertising when the consent form specifically said that the doctors were not employees. The trial court considered other factors to determine whether they supported or rebutted reliance on Kishwaukee's "other conduct," namely that (1) plaintiff was directed to Hobson by her insurer rather than by Kishwaukee; (2) her physician appointments were away from the hospital, though in close proximity; (3) the allegedly negligent physician was someone plaintiff had met with throughout her pregnancy and not just at the hospital; (4) the consent forms were written in plain language and were signed by plaintiff, and the patient authorization record further stated in bold-face print that physicians were independent practitioners and not employees and it required her initials after the paragraph; (5) plaintiff's desire to deliver at Kishwaukee was based on her prior positive experiences there rather than any overt action by the hospital to draw her there; (6) there was no evidence that plaintiff saw the ads relating to Hobson; (7) the ads plaintiff did see represented Kishwaukee as a full-service facility; (8) plaintiff's statement in her affidavit that she believed that Baumgart and Hobson were Kishwaukee employees was based on her request to her insurer to deliver at Kishwaukee, not on any conduct by the hospital; and (9) the fact that the consent forms were signed two hours after plaintiff was admitted to the hospital, and while she was in labor, might affect the knowing and voluntary nature of the consent.

¶ 19 The trial court concluded:

> "A cursory or in-depth exam of these factors coupled with the important factor of a signed consent can only lead to the legal conclusion that the plaintiff has not met her burden as to actual reliance on the hospital's conduct and, therefore, the motion for summary judgment by Kishwaukee is granted.
>
> I should add one other factor that I considered. Cases where consent was not found to bar a finding of apparent agency dealt with doctors first met at the hospital and not chosen by the patient.
>
> At the end of the day that's the key element. This is not somebody that she only saw at the hospital. She saw away from the hospital. The other cases that were all cited even though some of the doctors were their private physicians, their private physicians were referring them to doctors at the hospital for treatment, and that's not the case here. The person she saw outside the hospital is the same person she saw at the hospital. Therefore, I think that the consent form does bar her action for apparent agency."

¶ 20 The trial court included in its order a finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason to delay the appeal or enforcement of the order. Plaintiff timely appealed. The claims against Hobson and NIF remain pending in the trial court.

¶ 21                                         II. ANALYSIS

¶ 22 On appeal, plaintiff challenges the trial court's grant of summary judgment for Kishwaukee on the issue of Hobson's apparent agency. Summary judgment is appropriate only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). Summary

judgment is a drastic means to dispose of litigation and should be granted only where the movant's right is clear and free from doubt. *Yarbrough v. Northwestern Memorial Hospital*, 2017 IL 121367, ¶ 79. We review *de novo* a trial court's ruling on a motion for summary judgment. *Nichols v. Fahrenkamp*, 2019 IL 123990, ¶ 13.

¶ 23 As the trial court discussed, *Gilbert* is the primary authority on the issue before us. There, our supreme court noted that, in an effort to compete for health care dollars, modern hospitals use expensive advertising campaigns to hold themselves out to the public as offering quality health services. *Gilbert*, 156 Ill. 2d at 520. The court stated that many patients rely on the hospital's reputation and naturally assume that the professionals there are employees, unless the patients are otherwise put on notice. *Id.* at 521. It concluded that a hospital therefore should not always escape liability simply because the physician rendering the care was an independent contractor. *Id.* at 522; see also *Yarbrough*, 2017 IL 121367, ¶ 40 ("The realities of modern hospital care that informed our decision [in *Gilbert*] are even more true today.").

¶ 24 The supreme court held that, "under the doctrine of apparent authority, a hospital can be held vicariously liable for the negligent acts of a physician providing care at the hospital, regardless of whether the physician is an independent contractor, unless the patient knows, or should have known, that the physician is an independent contractor." *Gilbert*, 156 Ill. 2d at 524. As the trial court pointed out, a plaintiff must show that:

> " '(1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent

with ordinary care and prudence.' " *Id.* at 525 (quoting *Pamperin v. Trinity Memorial Hospital*, 423 N.W.2d 848, 856 (Wis. 1988)).

¶ 25 The first two elements are often grouped together and called the "holding out" factor. *Mizyed v. Palos Community Hospital*, 2016 IL App (1st) 142790, ¶ 39; see also *Yarbrough*, 2017 IL 121367, ¶ 30. A hospital may be deemed to "hold out" an independent contractor as an employee if it holds itself out as a provider of emergency room care without informing the patient that independent contractors are performing the care; the hospital need not make an express representation that the contractor is an employee. *Gilbert*, 156 Ill. 2d at 525. The third element, of justifiable reliance, is satisfied if the plaintiff relies on the hospital, rather than a specific physician, to provide complete emergency room care. *Id.*

¶ 26 Though *Gilbert* involved an emergency room setting, its analysis is not limited to such situations. *McIntyre v. Balagani*, 2019 IL App (3d) 140543, ¶ 110. Whether an alleged agent was authorized to act is a question of fact, as is whether a person had notice of the lack of an agent's authority, or was put on notice by the circumstances. *Gilbert*, 156 Ill. 2d at 524. However, the court may determine whether an agency relationship exists as a matter of law if only one conclusion can be drawn from the undisputed facts. *Churkey v. Rustia*, 329 Ill. App. 3d 239, 242-43 (2002).

¶ 27    Applying these principles to the facts in the case before it, the supreme court in *Gilbert* reversed the trial court's grant of summary judgment in the hospital's favor, stating that there was a genuine issue of material fact as to whether the emergency room doctor was an apparent agent of the hospital. *Gilbert*, 156 Ill. 2d at 526. The decedent had been assigned the doctor, whom he had never met before, as opposed to asking for him. *Id.* Further, the hospital did not inform patients that the emergency room doctors were independent contractors, and its consent form, which the decedent signed, stated that he would be treated by " 'physicians and employees of the hospital.' "

*Id.* The supreme court concluded that, at a minimum, reasonable people could draw different inferences from the facts as to the elements of apparent agency, making summary judgment inappropriate. *Id.*

¶ 28 In this case, plaintiff first argues that she met her burden on the "holding out" factor of the *Gilbert* analysis. She points to her deposition testimony and the statements in her affidavit that, before she became pregnant with Alexis, she saw Kishwaukee's advertisements, the general theme of which was that Kishwaukee provided high-quality, full-service medical care and that its doctors had great expertise. Plaintiff highlights that the trial court found that she had met her burden on this factor, stating that Kishwaukee's advertisements using Hobson's biographical data and likeness could lead a reasonable person to conclude that the two parties had an employer-employee relationship.

¶ 29 Plaintiff argues that the trial court's reasoning was correct on this point. She cites *McCorry v. Evangelical Hospitals Corp.*, 331 Ill. App. 3d 668, 671 (2002), in which the hospital's advertising stated that its staff included hundreds of highly qualified physicians, whom it referred to as " 'our physicians.' " The appellate court reversed the trial court's grant of summary judgment in the hospital's favor on apparent agency, stating that the "evidence could support a finding that the hospital held itself out as the principal for its agents, including the highly qualified physicians, who directly provided the advertised health care." *Id.* at 672. Plaintiff also cites *Spiegelman v. Victory Memorial Hospital*, 392 Ill. App. 3d 826, 841 (2009), where the appellate court agreed with the plaintiff's argument that " '[t]he Hospital cannot have it both ways. It cannot advertise it has the best doctors in the community and then tell a jury that there is no evidence that emergency department doctors were its employees.' " Plaintiff argues that her evidence of Kishwaukee holding out Hobson as its agent or employee is even stronger than that in the cited cases, because

Kishwaukee's advertisements were specific to Hobson herself. She maintains that Hobson also testified that during the delivery she wore hospital scrubs that had "Kishwaukee Hospital" identifying marks.

¶ 30 Plaintiff argues that she also met her burden of production on the third, "reliance" element of the *Gilbert* analysis in that she relied upon Kishwaukee, rather than a specific physician, to provide care. Plaintiff argues that it is undisputed that she specifically chose Kishwaukee as the place to deliver Alexis, because plaintiff had gone there for her childhood medical care and had chosen to deliver her first two children there. Plaintiff points to her testimony that she contacted her medical insurer and requested a prenatal doctor who delivered babies at Kishwaukee. Plaintiff asserts that the trial court misapplied the law on this element in that it focused on a standard akin to detrimental reliance by concentrating on whether plaintiff relied on Kishwaukee's advertising. Plaintiff argues that such a detrimental-reliance analysis was rejected in *Gilbert* and its progeny. According to plaintiff, only partial reliance on the hospital when accepting treatment is required to satisfy *Gilbert*. See *McCorry*, 331 Ill. App. 3d at 675.

¶ 31 Plaintiff argues that, when viewed in the light most favorable to her, the other factors that the trial court considered do not support the conclusion that she failed to meet her burden of production on the issue of reliance. She maintains that her medical insurer's involvement in her decision to use Kishwaukee for Alexis's delivery did not preclude her from meeting her burden, as reliance can be established despite a third party directing the plaintiff to the hospital. See *Monti v. Silver Cross Hospital*, 262 Ill. App. 3d 503, 507-08 (1994) (although the patient was unconscious, the people responsible for her, including the paramedics, relied upon the hospital to provide complete emergency room care); *Scardina v. Alexian Brothers Medical Center*, 308 Ill. App. 3d 359, 367-68 (1999) (reliance could be established even though the plaintiff was directed

to the hospital by his personal physician). Plaintiff argues that she did not select Hobson or even Baumgart, but, rather, she selected Kishwaukee, which is how she came to see Baumgart. She relatedly argues that her preexisting relationship with Hobson did not preclude her from meeting her burden on reliance. See *Malanowski v. Jabamoni*, 293 Ill. App. 3d 720 (1997) (mere existence of a regular physician-patient relationship does not preclude a claim that the patient relied on the hospital). Plaintiff maintains that, therefore, the trial court erred in stating that "[c]ases where consent was not found to bar a finding of apparent agency dealt with doctors first met at the hospital and not chosen by the patient."

¶ 32 Plaintiff argues that, to the extent that the trial court found that the location of her prenatal visits supported the entry of summary judgment, this should be a question for the jury. She also argues that the trial court's statement, that she wanted to deliver at Kishwaukee based on her prior experience there as opposed to any overt action by the hospital, ignores evidence to the contrary. Plaintiff points to her testimony that, before becoming pregnant with Alexis, she had seen advertising for Kishwaukee touting it as a high-quality facility whose doctors had great expertise, and that she chose the hospital in part based on its reputation. She argues that whether she saw the advertisements relating to Hobson is irrelevant. See *Spiegelman*, 392 Ill. App. 3d at 839-41 (hospital's advertisements are relevant to the "holding out" factor, even if the plaintiff did not see them).

¶ 33 Plaintiff discusses the consent forms in depth. She argues that they should be considered in the context of "holding out" rather than reasonable reliance. See *Gilbert*, 156 Ill. 2d at 525. She additionally argues that the existence of an employment disclaimer in a consent form is not dispositive on this issue. See *James v. Ingalls Memorial Hospital*, 299 Ill. App. 3d 627, 632 (1998) ("While we do not hold that the existence of an independent contractor disclaimer in a consent

form is always dispositive on the issue of 'holding out,' it is an important factor to consider."). Plaintiff cites *Churkey*, 329 Ill. App. 3d at 245, where the court stated: "There certainly could be situations in which a patient signs a consent form containing such a disclaimer but additional facts exist that would create a triable issue of fact as to whether the hospital held the defendant physician out as its agent."

¶ 34 Plaintiff asserts that employee-status disclaimers that are given at the last minute or without meaningful time have been held to bar a hospital from avoiding the application of apparent authority. She cites *Fragogiannis v. Sisters of St. Francis Health Services, Inc.*, 2015 IL App (1st) 141788, ¶ 22, where the court stated that "a third party signing a consent form after the negligence has occurred and after the patient is brain dead would not inform any unsuspecting patient that the four doctors that treated the individual were independent contractors." Plaintiff highlights evidence that, when she signed the consent forms, she had already started receiving labor and delivery care, including fetal monitoring, evaluation of pain complaints, and preparation for an injection of an epidural anesthetic for pain. She argues that presenting the consent forms then transformed them into little more than a contract of adhesion.

¶ 35 Plaintiff further argues that the consent forms were ambiguous and confusing because they were comprised of multiple parts. Plaintiff cites *Schroeder v. Northwest Community Hospital*, 371 Ill. App. 3d 584, 587 (2007), where the consent form stated:

" 'Your care will be managed by your personal physician or other physicians *who are not employed by Northwest Community Hospital* or Northwest Community Day Surgery Center but have privileges to care for patients at this facility. *** Your physician may also decide to call in consultants who practice in other specialties and may be involved in your care. Like your physician, those consultants have privileges to care for patients  at

this facility, *but are not employed by Northwest Community Hospital* or Northwest Community Day Surgery Center.' " (Emphases in original.)

The plaintiff argued that the consent form was confusing and ambiguous because it could be reasonably interpreted to mean that his personal physicians were employed by the hospital but that other unidentified physicians were not. *Id.* at 589. The appellate court concluded that there were genuine questions of material fact on the issue of apparent agency such that summary judgment was inappropriate. *Id.* at 593-94.

¶ 36 Plaintiff also cites *Spiegelman*, 392 Ill. App. 3d at 837, where the consent form used a multi-part format and contained provisions unrelated to the independent-contractor disclaimer. The signature line was beneath a separate, unrelated paragraph, and immediately before the paragraph containing the disclosure was a paragraph stating: " 'I am aware that during my visit to the Emergency Department of VICTORY MEMORIAL HOSPITAL, *hospital employees* will attend to my medical needs as may be necessary.' " (Emphasis in original.) *Id.* The court stated that a jury could infer that the plaintiff was confused as to which doctors were hospital employees and which were independent contractors. *Id.*

¶ 37 Plaintiff argues that, similar to the consent form in *Spiegelman*, the two signature lines were located immediately below bolded sections that addressed topics wholly unrelated to employment status. Plaintiff argues that, as in *Schroeder* and *Spiegelman*, Kishwaukee's disclaimer paragraph was ambiguous because it was buried among multiple paragraphs not pertaining to agency or employment status. She argues that the disclaimer was also contained in a paragraph whose title ambiguously referred to "Physician Services," it was sandwiched between sentences concerning billing, and it did not have a separate line for her signature or initials directly adjacent to the statement of disclaimer.

¶ 38 Plaintiff continues that, unlike in cases upholding summary judgment for hospitals on apparent agency, the consent form here did not identify Hobson or NIF by name and did not specifically disclaim an agency relationship with either of them. Plaintiff argues that the trial court therefore erred in relying on *Churkey*, 329 Ill. App. 3d at 244, and *James*, 299 Ill. App. 3d at 629. She also argues that the disclaimer's use of the phrase "for example" "creates ambiguity as to whether the specialties listed therein are independent practitioners in reality or simply in theory." See *Hammer v. Barth*, 2016 IL App (1st) 143066, ¶ 24 (disclaimer was ambiguous where it stated that " '*some or all* of the physicians who provide medical services' " at the hospital " 'are not employees or agents of the hospital, but rather independent practitioners' " and that " '[n]on-employed physicians *may* include, but are not limited to, those practicing emergency medicine, trauma, cardiology, obstetrics, surgery, radiology, anesthesia, pathology and other specialties.' " (Emphases in original.) Plaintiff asserts that Kishwaukee could have clearly and unambiguously conveyed Hobson's independent-contractor status in a consent form but failed to do so.

¶ 39 Plaintiff argues that, based on the deficiencies that she has highlighted, a jury could reasonably find that Kishwaukee did not effectively disclaim an employer-employee relationship with Hobson, such that the trial court erred in granting Kishwaukee summary judgment on the issue of apparent agency.

¶ 40 Kishwaukee responds that plaintiff has failed to establish any of *Gilbert*'s requirements. It argues that it did not hold out Hobson as its employee but rather its consent forms affirmatively advised plaintiff to the contrary. Kishwaukee argues that the patient authorization record emphasized that physician services would be provided by independent contractors, that plaintiff was required to initial that paragraph, and that she also signed the bottom of the page. Kishwaukee argues that the consent for obstetrical services contained a similar disclosure and also required

plaintiff's signature. Quoting *Frezados v. Ingalls Memorial Hospital*, 2013 IL App (1st) 121835, ¶ 22, Kishwaukee argues that the forms stated "clearly and concisely that none of the physicians at [Kishwaukee] are its employees, agents, or apparent agents and are instead independent contractors." It maintains that, unlike in *Schroeder* and *Spiegelman*, there was no equivocation in the forms, in that there was no suggestion that some treating physicians might be independent contractors while others might be hospital employees. Kishwaukee argues that plaintiff acknowledged that she comprehended the forms by initialing the paragraph about independent contractors, signing both forms, and stating in her deposition that, when she was deposed, she understood the relevant paragraphs.

¶ 41 Kishwaukee contends that the consent forms here are analogous to consent forms the appellate court has found sufficient to support summary judgment in favor of a hospital on an apparent-agency claim. Kishwaukee cites *Wallace v. Alexian Brothers Medical Center*, 389 Ill. App. 3d 1081, 1083 (2009), where the consent form stated:

> " 'I understand that physicians who provide professional services to me such as my attending physician and consulting physicians, are not the employees or agents of Alexian Brothers Medical Center, but they are independent contractors who will be providing their specialized services on my behalf and as such will be my employees or agents. Alexian Brothers Medical Center is not responsible for the services these physicians provide. These physician's and their employee's services will be billed separately.' "

Kishwaukee further cites *Churkey*, 329 Ill. App. 3d at 241, where the consent form stated:

> " 'To provide for specialized services such as Diagnostic Imaging and Anesthesia, Sherman Hospital has entered into agreements with independent groups of physicians. The independent groups that contract to provide services to the hospital are: \*\*\*

I understand that Sherman Hospital uses independently contracted physicians and physician's [*sic*] groups to perform specific services such as Anesthesia and Radiological services for the hospital and its patients. The physicians are not employees of Sherman Hospital but have been granted privileges to practice at the institution, and if that is the case, I can expect to receive a separate bill from these physicians or physician groups.' "

Last, Kishwaukee cites *Lamb-Rosenfeldt v. Burke Medical Group, Ltd.*, 2012 IL App (1st) 101558, ¶ 4, where the disclaimer stated in part: " 'NONE OF THE PHYSICIANS WHO ATTEND TO ME AT THE HOSPITAL ARE AGENTS OR EMPLOYEES OF THE HOSPITAL.' " Kishwaukee argues that, as in this case, the form in *Lamb-Rosenfeldt* also contained multiple parts. *Id.* ¶ 30.

¶ 42  Kishwaukee asserts that, contrary to plaintiff's argument, the consent forms did not need to identify Hobson or NIF by name. Kishwaukee argues that neither *Churkey* nor *James* creates such a requirement and that *Frezados*, *Wallace*, and *Lamb-Rosenfeldt* found sufficient consent forms that did not identify specific physicians or medical corporations. Kishwaukee argues that the fact that plaintiff was in labor was not significant, as she was in labor even before arriving, and that *Gilbert* speaks only to what the actions of the hospital and physician would have conveyed to a reasonable person. Kishwaukee also points out that plaintiff signed the forms over six hours before Alexis was actually born.

¶ 43 Kishwaukee further argues that its advertising did not create a genuine question of material fact. It contends that the advertising implicates the issue of reasonable reliance and not whether a hospital has held out a doctor as an employee. Kishwaukee argues that, therefore, there is no need to engage in this analysis, as plaintiff did not satisfy her burden on the "holding out" factor. It asserts that *McCorry* and *Spiegelman* are distinguishable for this reason, in that the courts there

did not hold that the consent forms informed the patients of the doctors' independent contractor status. Kishwaukee argues that, in *Spiegelman*, it was only after the court concluded that the evidence was unclear that it ruled that the plaintiff could introduce evidence of hospital advertising to prove the reasonable-reliance element of her claim. Kishwaukee maintains that, even if the advertisements are relevant to the issue of "holding out," they do not create an ambiguity sufficient to defeat summary judgment, because they communicated that Hobson had staff privileges at Kishwaukee but was a private physician affiliated with NIF.

¶ 44 Kishwaukee also argues that the trial court properly concluded that plaintiff could not satisfy *Gilbert*'s reasonable-reliance element. Kishwaukee cites *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 193-94 (2006), where the supreme court held that, even if a patient selects a particular primary physician to perform services, the patient may still reasonably rely on the hospital to provide the remainder of the necessary support services, and the hospital can be liable if a supporting physician commits malpractice. Kishwaukee also cites *Yarbrough*, 2017 IL 121367, ¶ 6, where the plaintiff thought that her clinic was part of Northwestern Memorial Hospital, because she was told that she would most likely deliver her baby at that hospital. The supreme court stated that "*Gilbert* does not suggest that merely granting a physician employed by another entity hospital staff privileges alone could create an apparent agency relationship." *Id.*

¶ 46. Kishwaukee argues that, read together, *Gilbert*, *York*, and *Yarbrough* establish two things: (1) when a plaintiff chooses to be treated by her personal physician at a hospital, she is relying on that physician, and not the hospital, for her care, such that a hospital is not responsible for the physician's alleged negligence, and (2) granting a physician privileges to practice at a hospital does not create an apparent-agency relationship.

¶ 45 Kishwaukee argues that these two considerations show why plaintiff could not have reasonably relied on the hospital to provide her with obstetrical care. Kishwaukee argues that plaintiff selected her personal physicians, Baumgart and Hobson, because she wanted to deliver at Kishwaukee, because the doctors had privileges to practice there, and because her insurance would cover the services. Kishwaukee maintains that, although plaintiff assumed that her personal physicians were Kishwaukee employees, *Yarbrough* shows that a subjective belief cannot satisfy *Gilbert*'s reasonable-reliance element. Kishwaukee notes that plaintiff did not arrive at the hospital for emergency room care or have a physician randomly assigned to her. It argues that, instead, plaintiff seeks to hold it liable for the alleged negligence of her personally selected private physician. It argues that plaintiff's reliance on her physicians is shown by her going to NIF upon learning of her pregnancy, rather than the hospital; her following her doctor's instructions, including testing at Rockford Memorial Hospital; and her understanding and intention that Baumgart or Hobson would perform the delivery. Kishwaukee argues that the trial court correctly applied precedent in stating that all cases where consent was found not to be a bar involved doctors whom the patients first met at the hospital and who were not chosen by them.

¶ 46 In her reply brief, plaintiff argues that, *inter alia*, in her deposition, she was asked if she understood the pertinent language at the time of her deposition, as opposed to when she signed the consent forms. She maintains that there was also a question of fact as to the extent of her understanding of Hobson's employment status. Plaintiff further argues that a preexisting relationship between a doctor and a patient does not bar the patient from proving reliance, as *York* and *Malanowski* show, as well as *Williams v. Tissier*, 2019 IL App (5th) 180046, a case published after plaintiff filed her appellant's brief.

¶ 47 We conclude that the trial court correctly granted summary judgment in Kishwaukee's favor. We first address the parties' disagreement over whether a hospital's advertisements go to the "holding out" factor or to justifiable reliance. In *Gilbert*, our supreme court stated that the modern realities of hospital care include that "[h]ospitals increasingly *hold themselves out* to the public in expensive *advertising* campaigns as offering and rendering quality health services." (Emphases added.) *Gilbert*, 156 Ill. 2d at 520 (quoting *Kashishian v. Port*, 167 Wis. 2d 24, 38 (1992)). Thus, the supreme court directly stated that a hospital's advertising is relevant to the question of "holding out." See also *Hammer*, 2016 IL App (1st) 143066, ¶ 26 (advertisements pertain to the "holding out" factor). Kishwaukee attempts to rely on *Spiegelman* for the opposite result, but even that case stated, "In the case *sub judice,* the advertisements were relevant to the element of holding out— whether the hospital held itself out as a provider of complete medical care." *Spiegelman*, 392 Ill. App. 3d at 841. That being said, the issue of advertising is not exclusive to the "holding out" factor, but rather the "advertising materials would go to [both] the elements of 'holding out' and justifiable reliance." *Petrovich v. Shared Health Plan of Illinois, Inc.*, 296 Ill. App. 3d 849, 860 (1998); see also *Williams*, 2019 IL App (5th) 180046, ¶¶ 51, 55 (considering the advertisements in the contexts of both "holding out" and justifiable reliance).

¶ 48 Looking at the advertisements in this case, we agree with the trial court that Kishwaukee's advertising, which specifically mentioned Hobson by name and in some cases included her photograph, could, *if viewed in isolation*, create a question of material fact as to whether there was an employer-employee relationship between the hospital and Hobson. Though Kishwaukee argues that the advertisements communicated that Hobson was a private physician affiliated with NIF, the advertisements "welcome" Hobson to the hospital staff, mention her background, and contain

Kishwaukee's name and in some cases its logo, all without directly stating that Hobson was an independent contractor.

¶ 49 While the advertisements contained Kishwaukee's name and/or logo, plaintiff's assertion that the scrubs that Hobson wore during delivery were similarly marked is without merit. Hobson testified that the scrubs were labeled "Kishwaukee Hospital" "[i]n the back where the tag" was, but nowhere else. Accordingly, the scrubs do not lend support to plaintiff's assertion that Kishwaukee held Hobson out as an employee.

¶ 50 The "holding out" factor also includes consideration of whether the hospital informed the patient of the physician's independent-contractor status. *Gilbert*, 156 Ill. 2d at 525. As plaintiff recognizes, "the existence of an independent contractor disclaimer in a consent form is [not] always dispositive on the issue of 'holding out,' [but] it is an important factor to consider." *James*, 299 Ill. App. 3d at 632.

¶ 51 We reject plaintiff's argument that the consent forms are meaningless because she signed them while she was in labor. Indeed, *Gilbert* and many of its citing cases involved a situation in which a patient was admitted to an emergency room, which generally means that the patient has a medical condition requiring emergency treatment. However, the cases still examined the consent form's language to determine whether the patient was adequately informed of the physician's employment status. See *Frezados*, 2013 IL App (1st) 121835, ¶ 24 ("Nearly everyone who seeks emergency treatment is in some physical or emotional distress, and were we to hold that such distress could operate to nullify provisions in an otherwise duly signed treatment consent form, hospitals would always be required to proceed to trial on claims of vicarious liability."). In *Frezados*, the appellate court specifically stated that pain did not excuse the plaintiff from reading the consent form or having someone else sign the consent form if he could not, due to his condition.

*Id.* ¶ 24; see also *Mizyed*, 2016 IL App (1st) 142790, ¶¶ 53-54 (one who signs a document is charged with knowing its contents, even if the person is illiterate or does not speak English). Further, as Kishwaukee points out, plaintiff was admitted around 6 p.m. and signed the forms at about 8 p.m., but Alexis was not born until 2:29 a.m. the following day, meaning that plaintiff was far from the final stage of labor when she signed the forms. This case is readily distinguishable from *Fragogiannis*, 2015 IL App (1st) 141788, ¶ 22, which plaintiff relies on, because there a third party signed the consent form after the negligence had already occurred and the patient was brain dead.

¶ 52 We also do not agree with plaintiff that the consent forms were ambiguous and confusing. The patient authorization record was a single page; the statement that physicians were independent contractors and not employees or agents of Kishwaukee was in bold type; the form required plaintiff's initials after the paragraph that contained this bolded sentence; and plaintiff additionally signed the bottom of the form. See *supra* ¶ 10. The consent for obstetrical services was two pages long and contained bulleted paragraphs, one of which contained the single sentence: "I understand that the physicians who participate in the procedure (for example: surgeon, assistants, anesthesiologist, obstetrician, pathologist, and the like) are independent practitioners and are not employees or agents of Kishwaukee Community Hospital." Plaintiff signed the signature line of the second page of the form, below the bolded statement that her signature constituted an acknowledgement that she had read, understood, and agreed to the foregoing items. See *supra* ¶ 10.

¶ 53 *Schroeder* and *Spiegelman* are readily distinguishable because the consent forms there were ambiguous and could reasonably be interpreted to mean that the patients might be attended by physicians who were hospital employees. See *supra* ¶¶ 36-37. We agree with Kishwaukee that, unlike in the aforementioned cases, the consent forms here clearly and concisely communicated

that all of the physicians were independent contractors, similar to the forms in *Frezados*, *Wallace*, *Lamb-Rosenfeldt*. See also *Gore v. Provena Hospital*, 2015 IL App (3d) 130446, ¶¶ 9, 28. Contrary to plaintiff's argument, the use of the phrase "for example" in the consent for obstetrical services does not alter this result, as the form unambiguously stated that the physicians who participated in the procedure were independent contractors, unlike the equivocal language in *Hammer*, 2016 IL App (1st) 143066, ¶ 24. See *supra* ¶ 38.

¶ 54 Finally, we also disagree with plaintiff's argument that the consent forms were insufficient because they did not identify Hobson or NIF by name. Notably, in *James*, 299 Ill. App. 3d at 629, one of the cases plaintiff relies on for this proposition, the form stated that the " 'physicians associated with SEA and the physicians on staff at this hospital are not employees or agents of the hospital, but independent medical practitioners.' " However, the case never stated that the allegedly negligent physician was part of the named practice. More significantly, as Kishwaukee highlights, many cases have found consent forms to be sufficient despite their failure to specifically identify particular physicians or medical corporations. See *supra* ¶ 42. That plaintiff might not have subjectively understood the consent forms does not create a genuine question of material fact, as we view the issue from the perspective of a reasonable person. See *Gilbert*, 156 Ill. 2d at 524.

¶ 55 Thus, although Kishwaukee's advertisements initially could have been seen to create a genuine question of material fact on the issue of whether Kishwaukee held Hobson out as an employee or agent, this question is resolved by the signed consent forms, which clearly and unambiguously informed plaintiff that the physicians at the hospital, which would include Hobson, were independent contractors. Again, we recognize that the existence of an independent-contractor disclaimer in a consent form is not always dispositive on the issue of "holding out," but it remains an important consideration (*James*, 299 Ill. App. 3d at 632), which has also been described as

" 'almost conclusive' in determining whether a hospital should be held liable for the medical negligence of an independent contractor" (*Steele v. Provena Hospitals*, 2013 IL App (3d) 110374, ¶ 131 (quoting *Thede v. Kapsas*, 386 Ill. App. 3d 396, 401 (2008)). Considering the clarity of the disclaimers here, Kishwaukee's advertising would not create a genuine question of material fact on this issue. Plaintiff also does not identify any other circumstance that would. Plaintiff therefore could not satisfy the "holding out" factor of the *Gilbert* test, meaning that she could not have been successful in her efforts to hold Kishwaukee liable for Hobson's actions, based on apparent agency.

¶ 56 Given our resolution, we need not discuss the third element of the *Gilbert* test, *i.e.*, justifiable reliance. See *Gore*, 2015 IL App (3d) 130446, ¶ 34 (where the plaintiff failed to establish the "holding out" factor, analysis of the third element of apparent agency was unnecessary); *Frezados*, 2013 IL App (1st) 121835, ¶ 25 ("Because we conclude that plaintiff has failed to raise a factual question as to the 'holding out' element of his cause of action, we need not determine whether there is evidence going to show plaintiff's justifiable reliance."). We therefore affirm the trial court's grant of summary judgment for Kishwaukee on the issue of Hobson's apparent agency.

¶ 57                                          III. CONCLUSION

¶ 58 For the reasons stated, we affirm the judgment of the De Kalb County circuit court.

¶ 59 Affirmed.

---

**No. 2-19-0346**

---

| | |
|---|---|
| **Cite as:** | *Prutton v. Baumgart*, 2020 IL App (2d) 190346 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of De Kalb County, No. 14-L-34; the Hon. William P. Brady, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Terrence M. Quinn, of Phillips Law Offices, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Aiju C. Thevatheril, Catherine Basque Weiler, and Laura K. Anderson, of Swanson Martin & Bell, LLP, of Chicago, for appellee. |

---